**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: FISHER-PRICE ROCK 'N PLAY SLEEPER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 1:19-md-2903<br><br>This Document Relates to: ALL CASES<br><br>Hon. Geoffrey W. Crawford |

**DECLARATION OF ADRIANNE E. MARSHACK IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

I, Adrianne E. Marshack, hereby declare as follows:

1.     I am an attorney duly admitted to practice before this Court.  I am a partner with the law firm Manatt, Phelps & Phillips LLP ("Manatt"), attorneys of record for Defendants Fisher-Price, Inc., ("Fisher-Price") and Mattel, Inc. ("Mattel") in this action.  The following is based on my personal knowledge, and if called as a witness, I could and would competently testify to the facts contained herein.

**I.     PROCEDURAL HISTORY**

2.     Following the recall of the RNPS, sixteen separate putative class actions were filed; one was filed the day before the recall.  All were subsequently consolidated for pretrial purposes in this MDL.  Plaintiffs filed their Consolidated Amended Complaint ("CAC") in this action on October 28, 2019.  (*See* Dkt. No. 19; *see also,* Dkt. No. 125-4 [Exhibit 1 to Plaintiffs' Motion for Class Certification].)

3.     Plaintiffs claim that the RNPS is unsafe for sleep or that Defendants misrepresented that the product could be used for sleep in at least 290 of the 1105 paragraphs in the CAC, and nearly one half of the general allegations (paragraphs 1-272).  (*See* CAC at ¶¶ 1-3,

10, 24-46, 69, 74-88, 92, 96-97, 100-115, 120-129, 132-135, 137-142, 144-147, 152-153, 159-160, 174, 176-177, 179-180, 182-195, 198, 205, 210-211, 214-215, 218-219, 222-225, 227, 230, 232-234, 266, 268, 279, 290-291, 296, 306-307, 309-310, 321, 328, 337-338, 340, 344, 353-354, 356-357, 368, 382-383, 388, 398-399, 401-402, 413, 427-428, 433, 449-450, 463-464, 466-467, 479-480, 494, 501, 507-508, 513, 521-522, 524, 536, 543, 549-550, 566-567, 569-570, 581, 588, 598-599, 604, 615-616, 618-619, 630, 637, 644-645, 647, 651, 661-662, 664-665, 676, 694-695, 702, 712-713, 715-716, 727, 734, 741-742, 747, 757-758, 760-761, 772, 779, 786-787, 792, 802-803, 805-806, 817, 823, 829-830, 835, 845-846, 848-849, 860, 867, 873-874, 876, 880, 890-891, 893-894, 905, 912, 920-921, 926, 936-937, 939-940, 951, 958, 966-967, 969, 974,  985-986, 988-989, 1000, 1007, 1017-1018, 1020, 1025, 1035-1036, 1038-1039, 1050, 1057, 1065-1066, 1068, 1073, 1083-1084, 1086-1087, 1098, and 1104.)  The CAC does not allege that the RNPS is unsafe for any purpose other than sleep.

## II.    DEPOSITIONS AND DEPOSITION TRANSCRIPTS

4.    On September 23, 2020, Plaintiffs deposed Anthony DeSimone ("DeSimone"), a former Fisher-Price employee.  Attached hereto as **Exhibit 1** are true and correct excerpts of the transcript from DeSimone's September 23 deposition.

5.    On December 11, 2020, Plaintiffs deposed Sarah Ford pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Ford Volume I").  Attached hereto as **Exhibit 2** are true and correct excerpts of the transcript from Ford's December 11 deposition (Volume I).

6.    On February 1, 2021, Plaintiffs deposed Sarah Ford again pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Ford Volume II").  Attached hereto as **Exhibit 3** are true and correct excerpts of the transcript from Ford's February 1 deposition (Volume II).

7.      On December 10, 2020, Plaintiffs deposed Catherine "Kitty" Pilarz ("Pilarz"), a current Fisher-Price employee.  Attached hereto as **Exhibit 4** are true and correct excerpts of the transcript from Pilarz's December 10 deposition.

8.      On December 17, 2020, Plaintiffs deposed Chuck Scothon ("Scothon"), a current Fisher-Price employee.  Attached hereto as **Exhibit 5** are true and correct excerpts of the transcript from Scothon's December 17 deposition.

9.      On September 30, 2020, Plaintiffs deposed Deirdre Stephens ("Stephens"), a former Fisher-Price employee.  Attached hereto as **Exhibit 6** are true and correct excerpts of the transcript from Stephens's September 30 deposition.

10.     Plaintiff Elizabeth Alfaro ("Alfaro") was deposed on April 4, 2021.  Attached hereto as **Exhibit 7** are true and correct excerpts of the transcript from Alfaro's April 4 deposition.

11.     Plaintiff Emily Barton ("Barton") was deposed on April 13, 2021.  Attached hereto as **Exhibit 8** are true and correct excerpts of the transcript from Barton's April 13 deposition.

12.     Plaintiff Linda Black ("Black") was deposed on March 23, 2021.  Attached hereto as **Exhibit 9** are true and correct excerpts of the transcript from Black's March 23 deposition.

13.     Plaintiff Luke Cuddy ("Cuddy") was deposed on March 23, 2021.  Attached hereto as **Exhibit 10** are true and correct excerpts of the transcript from Cuddy's March 23 deposition.

14.     Plaintiff Rebecca Drover ("Drover") was deposed on April 8, 2021.  Attached hereto as **Exhibit 11** are true and correct excerpts of the transcript from Drover's April 8 deposition.

15.    Plaintiff Megan Fieker ("Fieker") was deposed on March 25, 2021.  Attached hereto as **Exhibit <u>12</u>** are true and correct excerpts of the transcript from Fieker's March 25 deposition.

16.    Plaintiff Karen Flores ("Flores") was deposed on April 2, 2021.  Attached hereto as **Exhibit <u>13</u>** are true and correct excerpts of the transcript from Flores's April 2 deposition.

17.    Plaintiff Nancy Hanson ("Hanson") was deposed on March 25, 2021.  Attached hereto as **Exhibit <u>14</u>** are true and correct excerpts of the transcript from Hanson's March 25 deposition.

18.    Plaintiff Jena Huey ("Huey") was deposed on April 16, 2021 and April 28, 2021 (Volumes I and II).  Attached hereto as **Exhibit <u>15</u>** are true and correct excerpts of the transcript from Huey's April 16 and April 28 depositions (Volumes I and II).

19.    Plaintiff Samantha Jacoby ("Jacoby") was deposed on April 8, 2021.  Attached hereto as **Exhibit <u>16</u>** are true and correct excerpts of the transcript from Jacoby's April 8 deposition.

20.    Plaintiff Megan Kaden ("Kaden") was deposed on April 14, 2021, April 15, 2021 and April 26, 2021 (Volumes I, II and III).  Attached hereto as **Exhibit <u>17</u>** are true and correct excerpts of the transcript from Kaden's April 14, 15 and 26 depositions (Volumes I, II and III).

21.    Plaintiff Kerry Mandley ("Mandley") was deposed on March 30, 2021.  Attached hereto as **Exhibit <u>18</u>** are true and correct excerpts of the transcript from Mandley's March 30 deposition.

22.    Plaintiff Cassandra Mulvey ("Mulvey") was deposed on March 30, 2021. Attached hereto as **Exhibit <u>19</u>** are true and correct excerpts of the transcript from Mulvey's March 30 deposition.

23.     Plaintiff Joshua Nadel ("Nadel") was deposed on April 13, 2021.  Attached hereto as **Exhibit <u>20</u>** are true and correct excerpts of the transcript from Nadel's April 13 deposition.

24.     Plaintiff Melanie Nowlin ("Nowlin") was deposed on April 1, 2021.  Attached hereto as **Exhibit <u>21</u>** are true and correct excerpts of the transcript from Nowlin's April 1 deposition.

25.     Plaintiff Daniel Pasternacki ("Pasternacki") was deposed on April 6, 2021. Attached hereto as **Exhibit <u>22</u>** are true and correct excerpts of the transcript from Pasternacki's April 6 deposition.

26.     Plaintiff Jessie Poppe ("Poppe") was deposed on March 23, 2021.  Attached hereto as **Exhibit <u>23</u>** are true and correct excerpts of the transcript from Poppe's March 23 deposition.

27.     Plaintiff Katherine Shaffer ("Shaffer") was deposed on March 25, 2021.  Attached hereto as **Exhibit <u>24</u>** are true and correct excerpts of the transcript from Willis's March 25 deposition.

28.     Plaintiff Emily Simmonds ("Simmonds") was deposed on April 13, 2021. Attached hereto as **Exhibit <u>25</u>** are true and correct excerpts of the transcript Simmonds's April 13 deposition.

29.     Plaintiff Josie Willis  ("Willis") was deposed on March 18, 2021.  Attached hereto as **Exhibit <u>26</u>** are true and correct excerpts of the transcript from Willis's March 18 deposition.

30.     Plaintiff Renee Wray ("Wray") was deposed on May 26, 2021.  Attached hereto as **Exhibit <u>27</u>** are true and correct excerpts of the transcript from Wray's May 26 deposition.

31.     Plaintiffs' damages expert, Colin Weir, was deposed on March 11, 2021 ("Weir"). Attached hereto as **Exhibit 28** are true and correct excerpts of the transcript from Weir's March 11 deposition.

### III.    DEPOSITION EXHIBITS

32.     To give the Court complete context relating to the deposition testimony that is cited in Defendants' Opposition and included as Exhibits 1-28 hereto, Defendants are including as exhibits herein all exhibits that were introduced and discussed in the relevant deposition testimony.  Both Plaintiffs and Defendants consecutively numbered the exhibits they introduced at the depositions.  References to "**Plaintiffs' Deposition Exhibits**" means exhibits introduced by Plaintiffs at depositions they took (*e.g.,* the depositions of Fisher-Price's current and former employees), and "**Defendants' Deposition Exhibits**" means exhibits introduced by Defendants at depositions they took (*e.g.* the depositions of the Plaintiffs).  Defendants do not concede the relevance of any of these exhibits to class certification, unless cited in the Opposition, but are merely attaching them so that the Court can fully understand cited testimony.

33.     Attached hereto as **Exhibit 29** is a true and correct copy of a document produced by Defendants in this action, Bates stamped FSHR0011663-11664, which is a two-page photograph capturing Fisher-Price's webpage, entitled "A Bedtime Story."  This document was Plaintiffs' Deposition Exhibit No. 4.

34.     Attached hereto as **Exhibit 30** is a true and correct copy of documents produced by Defendants in this action, Bates stamped FSHR0005241, FSHR0005282, FSHR0005250, FSHR0005258, which DeSimone represented was four images, two of RNPS packaging, and two of RNPS Point of Purchase ("POP") cards.  This document was Plaintiffs' Deposition Exhibit No. 6.

35.     Attached hereto as **Exhibit <u>31</u>** is a true and correct copy of a document produced by Defendants in this action, Bates stamped FSHR0004127-4149, entitled Fisher-Price MRD (Marketing Research Development), dated June 23, 2011.  This document was Plaintiffs' Deposition Exhibit No. 11.

36.     Attached hereto as **Exhibit <u>32</u>** is a true and correct copy of a document produced by Defendants in this action, Bates stamped FSHR0049280-49286, which Deidre Stephens represented at her deposition was an email chain that she did not recall.  This document was Plaintiffs' Deposition Exhibit No. 13.

37.     Attached hereto as **Exhibit <u>33</u>** is a true and correct copy of a document produced by Defendants in this action, Bates stamped FSHR0003862-3864, a series of emails that Stephens represented she had sent and received in 2011.  This document was Plaintiffs' Deposition Exhibit No. 9.

38.     Attached hereto as **Exhibit <u>34</u>** is a true and correct copy of documents produced by Defendants in this action, Bates stamped FSHR0028358-28360, FSHR0028720-28724, a series of emails that Stephens represented she had received in 2017.  This document was Plaintiffs' Deposition Exhibit No. 17.

39.     Attached hereto as **Exhibit <u>35</u>** is a true and correct copy of a document produced by Defendants in this action, Bates stamped FSHR0024684-24691, a series of emails that Stephens represented she had received in 2011.  This document was Plaintiffs' Deposition Exhibit No. 19.

40.     Attached hereto as **Exhibit <u>36</u>** is a true and correct copy of a document produced by Defendants in this action, Bates stamped FSHR0047936-47937, which was a document entitled "A bedtime story: Designing the Rock 'n Play Sleeper" that was introduced at Catherine ("Kitty") Pilarz's deposition.  This document was Plaintiffs' Deposition Exhibit No. 22.

41.     Attached hereto as **Exhibit <u>37</u>** is a true and correct copy of a document introduced at Catherine ("Kitty") Pilarz's deposition, Bates stamped FSHR0064165-64176, that Plaintiffs' attorney James Eubank represented was screenshots from the Fisher-Price baby gear website. This document was Plaintiffs' Deposition Exhibit No. 25.

42.     Attached hereto as **Exhibit <u>38</u>** is a true and correct copy of a document introduced at Ford's December 11, 2020 deposition in this action, Bates stamped FSHR0001277, an Excel spreadsheet of different RNPS models and their suggested retail prices ("US MSRP") and average retail prices ("ARP") from 2009 to 2019.  This document was Plaintiffs' Deposition Exhibit No. 53.

43.     Attached hereto as **Exhibit <u>39</u>** is a true and correct copy of documents introduced at Ford's December 11, 2020 deposition in this action, Bates stamped FSHR0005658, FSHR0005664, FSHR0005667, FSHR0005673, FSHR0005679, which Ford represented was RNPS POP cards.  This document was Plaintiffs' Deposition Exhibit No. 60.

44.     Attached hereto as **Exhibit <u>40</u>** is a true and correct copy of a document introduced at Ford's December 11, 2020 deposition in this action, Bates stamped FSHR0011934, which Ford represented were RNPS POP cards.  This document was Plaintiffs' Deposition Exhibit No. 66.

45.     Attached hereto as **Exhibit <u>41</u>** is a true and correct copy of a document introduced at Ford's December 11, 2020 deposition in this action, Bates stamped FSHR0061936-61968, which Ford represented was an internal Fisher-Price PowerPoint presentation.  This document was Plaintiffs' Deposition Exhibit No. 67.

46.     Attached hereto as **Exhibit <u>42</u>** is a true and correct copy document introduced at Ford's December 11, 2020 deposition in this action, Bates stamped FSHR0058028-58029, which

Ford represented was an email she sent on October 31, 2018.  This document was Plaintiffs' Deposition Exhibit No. 68.

47.    Attached hereto as **Exhibit <u>43</u>** is a true and correct copy of a document introduced at Scothon's December 17, 2020 deposition, Bates stamped FSHR0048655-48675, which was an email to Scothon on October 26, 2011 and attachments, entitled "Materials for POP Mtg-10am PST today."  This document was Plaintiffs' Deposition Exhibit No. 81.

48.    Attached hereto as **Exhibit <u>44</u>** is a true and correct copy of a document introduced at Scothon's December 17, 2020 deposition, entitled "Media Statement on the Fisher-Price Rock 'n Play Recall Notice released on April 12, 2019."  This document was Plaintiffs' Deposition Exhibit No. 82, and has no Bates number.

49.    Attached hereto as **Exhibit <u>45</u>** is a true and correct copy of a document introduced at Ford's February 1, 2021, deposition, Bates stamped FSHR0028720-28724, which is an internal Fisher-Price email relating to blog posts about the RNPS.  This document was Plaintiffs' Deposition Exhibit No. 84.  The blog posts referenced in this Exhibit are attached hereto as Exhibits 82-103, set forth below.

50.    Attached hereto as **Exhibit <u>46</u>** is a true and correct copy of a document produced by Plaintiff Josie Willis in this action, Bates stamped Willis00000001-03, which Plaintiff Willis represented as color photographs that she took of her Rock 'n Play Sleeper ("RNPS").  This document was Defendants' Deposition Exhibit No. 12.

51.    Attached hereto as **Exhibit <u>47</u>** is a true and correct copy of a document produced by Plaintiff Josie Willis in this action, Bates stamped Willis00000004-05, which Plaintiff Willis represented was an email that Fisher-Price sent her on or around August 16, 2019, relating to the RNPS Recall.  This document was Defendants' Deposition Exhibit No. 15.

52.     Attached hereto as **Exhibit <u>48</u>** is a true and correct copy of a document produced by Plaintiff Jessie Poppe in this action, Bates stamped Poppe00000004, which Plaintiff Poppe represented was a notice she received from Fisher-Price relating to the RNPS recall. This document was Defendants' Deposition Exhibits No. 25.

53.     Attached hereto as **Exhibit <u>49</u>** is a true and correct copy of a document produced by Plaintiff Jessie Poppe in this action, which Plaintiff Poppe represented was the instructions she received from Fisher-Price relating to the RNPS Recall.  This document was Defendants' Deposition Exhibit No. 25-A.

54.     Attached hereto as **Exhibit <u>50</u>** is a true and correct copy of a document produced by Plaintiff Luke Cuddy in this action, Bates stamped Cuddy00000001, which Plaintiff Cuddy represented was a photograph of his daughter, taken on February 2017 and posted online by his wife.  This document was Defendants' Deposition Exhibit No. 34.

55.     Attached hereto as **Exhibit <u>51</u>** is a true and correct copy of a photograph of an inclined sleeper that is <u>not</u> an RNPS, which Plaintiff Black testified at her deposition was the sleeper that she purchased at Walmart.  This document was Defendants' Deposition Exhibit No. 38.

56.     Attached hereto as **Exhibit <u>52</u>**  is a true and correct copy of a document produced by Plaintiff Katharine Shaffer in this action, Bates stamped Shaffer00000001, which Plaintiff Shaffer represented was the receipt for her RNPS, purchased on April 5, 2018, from Amazon for $74.99.  This document was Defendants' Deposition Exhibit No. 40.

57.     Attached hereto as **Exhibit <u>53</u>** is a true and correct copy of a document produced by Plaintiff Megan Fieker in this action, Bates stamped Fieker00000001-02, which Plaintiff Fieker represented was the product registration form that came with her RNPS.  This document was Defendants' Deposition Exhibit No. 52.

10

58.     Attached hereto as **Exhibit <u>54</u>** is a true and correct copy of a document produced by Plaintiff Karen Flores in this action, Bates stamped Flores0000001, which Plaintiff Flores represented was a photograph of her purchase history off the Buy Buy Baby website, showing that she ordered the RNPS on August 23, 2018, for $79.99.  This document was to Defendants' Deposition Exhibit No. 69.

59.     Attached hereto as **Exhibit <u>55</u>** is a true and correct copy of a document produced by Plaintiff Karen Flores in this action, Bates stamped Flores00000022-25, which Plaintiff Flores represented was a photograph of her total purchases from the Buy Buy Baby website on August 23, 2018.  This document was Defendants' Deposition Exhibit No. 70.

60.     Attached hereto as **Exhibit <u>56</u>** is a true and correct copy of a document produced by Plaintiff Karen Flores in this action, Bates stamped Flores00000026, which Plaintiff Flores represented was a photograph of the Deluxe Newborn Auto Rock 'N Play from her daughter-in-law's baby registry.  This document was Defendants' Deposition Exhibit No. 71.

61.     Attached hereto as **Exhibit <u>57</u>** is a true and correct copy of a document produced by Plaintiff Karen Flores in this action, Bates stamped Flores00000028-29, which Plaintiff Flores represented was a notice of the RNPS Recall she received from  Buy Buy Baby.  This document was Defendants' Deposition Exhibit No. 90.

62.     Attached hereto as **Exhibit <u>58</u>** is a true and correct copy of a document produced by Plaintiff Daniel Pasternacki in this action, Bates stamped Pasternacki00000001-02, which Plaintiff Pasternacki represented was his Amazon receipt for the purchase of the Fisher Price Premium Auto Rock 'N Play Sleeper with Smart Connect on June 8, 2017, for approximately $76, not including tax.  This document was Defendants' Deposition Exhibit No. 94.

63.     Attached hereto as **Exhibit <u>59</u>** is a true and correct copy of a document produced by Plaintiff Daniel Pasternacki in this action, Bates stamped Pasternacki00000048-54, which

Plaintiff Pasternacki represented was his Amazon receipt for a Fisher-Price Premium Auto Rock 'N Play Sleeper with Smart Connect on June 23, 2017, for $70.55 before taxes and $76.19 with taxes.  This document was Defendants' Deposition Exhibit No. 95.

64.    Attached hereto as **Exhibit 60** is a true and correct copy of a document produced by Plaintiff Daniel Pasternacki in this action, Bates stamped Pasternacki00000005-21, which Plaintiff Pasternacki represented was a photograph he took from his cell phone of his television screen of the NBC nightly news with Lester Holt, publicizing the RNPS Recall.  This document was Defendants' Deposition Exhibit No. 100.

65.    Attached hereto as **Exhibit 61** is a true and correct copy of a document produced by Plaintiff Daniel Pasternacki in this action, Bates stamped Pasternacki00000003, which Plaintiff Pasternacki represented was sent to him by Fisher-Price relating to the RNPS Recall. This document was Defendants' Deposition Exhibit No. 101.

66.    Attached hereto as **Exhibit 62** is a true and correct copy of a document produced by Plaintiff Elizabeth Alfaro in this action, Bates stamped Alfaro00000001, which Plaintiff Alfaro represented were photographs of the RNPS that she purchased.  This document was Defendants' Deposition Exhibit No. 105.

67.    Attached hereto as **Exhibit 63** is a true and correct screenshot of a portion of the Fisher-Price website entitled Mattel and Fisher-Price Customer Service.  This document was Defendants' Deposition Exhibit No. 108.

68.    Attached hereto as **Exhibit 64** is a true and correct copy of a document produced by Plaintiff Samantha Jacoby in this action, Bates stamped Jacoby00000001-02, which Plaintiff Jacoby represented included the items on her Buy Buy Baby gift registry, indicating whether they had been purchased or unpurchased.  This document was Defendants' Deposition Exhibit No. 110.

69.     Attached hereto as **Exhibit <u>65</u>** is a true and correct copy of a document produced by Plaintiff Samantha Jacoby in this action, Bates stamped Jacoby0000005-06, which Plaintiff Jacoby represented was a list of the items purchased from her Buy Buy Baby gift registry.  This document was Defendants' Deposition Exhibit No. 111.

70.     Attached hereto as **Exhibit <u>66</u>** is a true and correct copy of a document produced by Plaintiff Samantha Jacoby in this action which Plaintiff Jacoby represented was a photograph of the Fisher-Price Deluxe Newborn Auto Rock 'N Play Sleeper Safari Dreams, which she registered for and received as a gift.  This document was Defendants' Deposition Exhibit No. 114.

71.     Attached hereto as **Exhibit <u>67</u>** is a true and correct copy of a document produced by Plaintiff Samantha Jacoby in this action, Bates stamped Jacoby00000003-04, which Plaintiff Jacoby represented was an email from Fisher-Price consumer services to her on December 6, 2019, entitled "Reminder Safety Recall Notice."  This document was Defendants' Deposition Exhibit No. 118.

72.     Attached hereto as **Exhibit <u>68</u>** is a true and correct copy of a document produced by Plaintiff Rebecca Drover in this action, Bates stamped Drover00000001-03, which Plaintiff Drover represented contained the details of the order for the Fisher-Price Newborn Rock 'N Play Sleeper, Luminosity model, on November 18, 2015, for $48 before sales tax.  This document was Defendants' Deposition Exhibit No. 124.

73.     Attached hereto as **Exhibit <u>69</u>** is a true and correct copy of a document produced by Plaintiff Emily Simmonds in this action, Bates stamped Simmonds00000007-10, which Plaintiff Simmonds represented was an email from a friend recommending baby products, including the RNPS.   This document was Defendants' Deposition Exhibit No. 128.

74.    Attached hereto as **Exhibit <u>70</u>** is a true and correct copy of a document produced by Plaintiff Emily Simmonds in this action, Bates stamped Simmonds00000015, which Simmonds represented was a photograph of her two children in the RNPSs that she owned.  This document was Defendants' Deposition Exhibit No. 129.

75.    Attached hereto as **Exhibit <u>71</u>** is a true and correct copy of a document produced by Plaintiff Emily Simmonds in this action, Bates stamped Simmonds00000001, which Plaintiff Simmonds represented was an email between her wife and the Craigslist seller of their second RNPS.  This document was Defendants' Deposition Exhibit No. 130.

76.    Attached hereto as **Exhibit <u>72</u>** is a true and correct copy of a document produced by Plaintiff Emily Barton in this action, Bates stamped Barton00000002, which Plaintiff Barton represented was an email she received from the Amazon.com Product Safety Team relating to the RNPS Recall.  This document was Defendants' Deposition Exhibit No. 140.

77.    Attached hereto as **Exhibit <u>73</u>** is a true and correct copy of a document produced by Plaintiff Megan Kaden in this action, Bates stamped Kaden00000001-02, which Plaintiff Kaden represented was two screenshots from her Facebook account, one of the Facebook Marketplace listing for her first RNPS, and one of a conversation between Kaden and a potential buyer.  This document was Defendants' Deposition Exhibit No. 152.

78.    Attached hereto as **Exhibit <u>74</u>** is a true and correct copy of a document produced by Plaintiff Jena Huey in this action, Bates stamped Huey00000001, which Plaintiff Huey represented was a photo she took of her daughter in her second RNPS, with the caption "Nova loves her new Rock 'N Play Sleeper!!! Light show and all," posted on Facebook.  This document was Defendants' Deposition Exhibit No. 157.

79.    Attached hereto as **Exhibit <u>75</u>** is a true and correct copy of a document produced by Plaintiff Jena Huey in this action which Plaintiff Huey represented was a receipt from an

Amazon purchase of the Fisher-Price Premium Auto Rock 'n Play Sleeper with SmartConnect on May 31, 2017, for $101.99 before tax that she made using her father's debit or credit card and shipped to her father in Arkansas.  This document was Defendants' Deposition Exhibit No. 158.

80.    Attached hereto as **Exhibit 76** is a true and correct copy of a document produced by Plaintiff Jena Huey in this action which Plaintiff Huey represented was a receipt from an Amazon purchase of the Fisher-Price Premium Auto Rock 'n Play Sleeper with SmartConnect on July 19, 2017, for $99.99 before tax, which she ordered using her grandmother's credit card. This document was Defendants' Deposition Exhibit No. 159.

81.    Attached hereto as **Exhibit 77** is a true and correct copy of the complaint from *Renee Wray v. Fisher-Price, Inc., and Mattel, Inc.,* No. 1:19-cv-01603, filed in the United States District Court for the District of Colorado on June 4, 2019.  This document was Defendants' Deposition Exhibit No. 164.

82.    Attached hereto as **Exhibit 78** is a true and correct copy of Plaintiff Wray's Responses and Objections to Fisher-Price, Inc.'s First Set of Consolidated Interrogatories to Plaintiffs.  This document was Defendants' Deposition Exhibit No. 168.

83.    Attached hereto as **Exhibit 105**[1] is a true and correct copy of the complaint from *Luke Cuddy v. Fisher-Price., Inc. and Mattel, Inc.*, No. 1:19-cv-00787, (W.D.N.Y. June 13, 2019).  This document was Defendants' Deposition Exhibit No. 33.

84.    Attached hereto as **Exhibit 106** is a true and correct copy of a document produced by Plaintiff Kerry Mandley in this action, Bates stamped Mandley000000001-10, which Plaintiff Mandley represented was a series of photographs of the RNPS she received as a gift.  This document was Defendants' Deposition Exhibit No. 77.

---

[1] Exhibits 79-104 are addressed elsewhere in this Declaration.

85.    Attached hereto as **Exhibit <u>107</u>** is a true and correct copy of a document produced by Plaintiff Jessie Poppe in this action which Plaintiff Poppe represented was an email she received from Fisher-Price dated July 17, 2019 and entitled "Rock 'n Play Sleeper Recall – Product Redemption." This document was Defendants' Deposition Exhibit No. 26-A.

86.    Attached hereto as **Exhibit <u>108</u>** is a true and correct copy of a document produced by Plaintiff Jessie Poppe in this action which Plaintiff Poppe represented was a screenshot that she took from her phone after clicking the "redeem now" link in the email that Fisher-Price sent her (Exhibit 107 in this motion and Defendants' Depo. Exhibit No. 26-A). This document was Defendants' Deposition Exhibit No. 26-B.

87.    Attached hereto as **Exhibit <u>109</u>** is a true and correct copy of the complaint from *Laura Carroll, Katherine Exo, Armand Ryden, and Katharine Shaffer, Individually and on Behalf of All Others Similarly Situated v. S.C. Johnson & Son, Inc. and VMG Partners, LLC*, No. 1:17-cv-05828, filed in United States District Court for the Northern District of Illinois, Eastern Division, on August 10, 2017. Plaintiff Katharine Shaffer represented that she was a plaintiff in this action. This document was Defendants' Deposition Exhibit No. 41.

88.    Attached hereto as **Exhibit <u>110</u>** is a true and correct copy of Plaintiff Megan Fieker's Responses and Objections to Fisher-Price, Inc.'s First Set of Consolidated Interrogatories to Plaintiffs. This document was Defendants' Deposition Exhibit No. 53.

89.    Attached hereto as **Exhibit <u>111</u>** is a true and correct copy of the complaint from *Nancy Hanson v. Fisher-Price, Inc.,* No. 4:19-cv-00204-SMR-SBJ, filed in the United States District Court for the Southern District of Iowa on July 9, 2019. This document was Defendants' Deposition Exhibit No. 57.

## IV.    PLAINTIFFS' DEPOSITION TESTIMONY SUPPORTING STATEMENT OF FACTS

90.    The following citations support facts cited in the Statement of Facts in Defendants' Opposition.  For the Court's ease, I recreate the heading in the Opposition, with a summary of the fact at it is stated in the brief, and the supporting deposition testimony of Plaintiffs.

### A.    Plaintiffs Acquired the Product in Different Ways, and Their Uses and Experiences with the RNPS Varied Significantly (Section II.H.)

#### 1.    Plaintiffs Acquired their RNPS Models in Different Ways (Section II.H.1.)

91.    Eight out of 12 Plaintiffs purchased their RNPS online:

- Exhibit 8 [Barton] at 213:7-215:19

- Exhibit 11 [Drover] at 54:18-55:18, 57:12-58:24, 67:23-25, 88:11-89:3

- Exhibit 13 [Flores] at 35:5-40:17

- Exhibit 15 [Huey] at 74:7-22

- Exhibit 17 [Kaden] at 87:1-93:22; 94:25-95:15, 127:3-131:6

- Exhibit 21 [Nowlin] at 141:2-142:20, 145:15-147:14

- Exhibit 22 [Pasternacki] at 48:12-24, 50:11-53:11

- Exhibit 24 [Shaffer] at 48:8-49:20

- Exhibit 52 [Defendants' Deposition Exhibit Nos. 40, 69-71, 94, 124]

92.    Four Plaintiffs purchased a RNPS in a store:

- Exhibit 7 [Alfaro] at 137:18-138:7, 146:15-147:21.

- Exhibit 9 [Black][2] at 71:21-72:18, 134:25-11

---

[2] Although Plaintiff Black did not purchase an RNPS, she did purchase and use an inclined sleeper, so her experience with such products is included as a demonstration of how consumers behave differently and have different experiences with the RNPS (and similar products).

- Exhibit 14 [Hanson] at 103:7-104:5

- Exhibit 20 [Nadel] at 158:20-159:20

- Exhibit 26 [Willis] at 105:3-106:19

93.   Plaintiff Black's inclined sleeper:

- Exhibit 9 [Black] at 71:21-72:18, 134:25-11

- Exhibit 51 [Defendants' Deposition Exhibit No. 38]

94.   Plaintiff Huey's father and grandmother paid for the RNPS units she ordered on Amazon.com:

- Exhibit 15 [Huey] at 74:7-75:22, 129:25-132:3, 142:3-143:21, 225:9-231:17, 232:5-238:4

- Exhibits 75-76 [Defendants' Deposition Exhibit Nos. 158-159]

95.   Three Plaintiffs purchased their RNPS secondhand:

- Exhibit 17 [Kaden] at 65:20-75:14, 176:2-14

- Exhibit 14 [Hanson] at 111:4-112:25

- Exhibit 25 [Simmonds] at 54:23-55:3, 73:16-75:4, 90:6-95:23

- Exhibits 70-71, 73 [Defendants' Deposition Exhibit Nos. 129-130, 152]

96.   Some Plaintiffs bought the RNPS as a gift for a family member and didn't use the RNPS themselves:

- Exhibit 11 [Drover] at 54:18-55:18, 57:12-60:21, 67:23-25, 71:2-80:6, 88:11-89:3

- Exhibit 13 [Flores] at 39:17-42:25, 47:24-49:18, 55:25-56:6

- Exhibits 56, 68 [Defendants' Deposition Exhibit Nos. 71, 124]

97.   Five out of the ten Plaintiffs who received a RNPS as a gift registered for the RNPS (and two who received a RNPS as a gift subsequently purchased one):

- Exhibit 12 [Fieker] at 95:15-96:23, 100:20-102:8, 188:10-192:7, 195:18-196:15

- Exhibit 16 [Jacoby] at 44:20-46:24, 56:17--58:18, 72:1-11

- Exhibit 18 [Mandley] at 72:17-75:22, 78:12-79:19, 145:3-22, 146:24-147:19

- Exhibit 19 [Mulvey] at 43:11-45:22, 51:8-52:2, 58:20-59:1

- Exhibit 20 [Nadel] at 74:19-24, 146:25-148:24, 149:24-150:12

- Exhibits 65, 66 [Defendants' Deposition Exhibit Nos. 111, 114]

98.    Three Plaintiffs received the RNPS as a gift without registering for it, and one was a group gift at an office baby shower that more than a dozen coworkers chipped in on:

- Exhibit 10 [Cuddy] at 85:23-86:1, 133:12-135:18, 137:22-139:5; 141:8-142:22

- Exhibit 15 [Huey] at 84:25-85:25, 88:24-89:9, 132:4-134:8

- Exhibit 23 [Poppe] at 69:16-70:12; 173:17-176:5

- Exhibit 50 [Defendants' Deposition Exhibit No. 33]

99.    Two Plaintiffs received a RNPS out-of-the-box as a hand-me-down (one picked hers up at a church trade group:

- Exhibit 25 [Simmonds] at 43:14-44:5, 73:16-75:4, 77:25-78:22

- Exhibit 27 [Wray] at 102:15-104:19, 142:4-147:17, 150:21-151:21

- Exhibits 70, 77 [Defendants' Deposition Exhibit Nos. 129, 164]

**2.    Many Factors Influenced Plaintiffs' Decision to Buy/Use the RNPS (Section II.H.2.)**

100.    Nearly 50% of the Plaintiffs decided to purchase or register for an RNPS based solely or primarily on a recommendation of a friend of family member:

- Exhibit 8 [Barton] at 94:12-96:14, 114:14-116:24, 213:7-219:17, 221:16-18

- Exhibit 11 [Drover] at 58:17-61:1, 68:1-14, 69:17-70:21

- Exhibit 12 [Fieker] at 78:10-80:5, 84:9-85:12, 103:8-105:21, 196:16-201:7

- Exhibit 14 [Hanson] at 45:4-48:1, 104:6-107:21

- Exhibit 15 [Huey] at 78:21-81:16, 86:1-88:23, 132:4-134:20, 135:18-136:20

- Exhibit 16 [Jacoby] at 39:17-40:22, 44:20-46:24, 56:17-58:13; 72:1-11, 115:6-116:19

- Exhibit 17 [Kaden] at 46:11-48:14; 48:25-49:19, 112:20-116:22

- Exhibit 19 [Mulvey] at 36:20-40:14

- Exhibit 24 [Shaffer] at 42:2-48:6, 51:18-52:11

- Exhibit 25 [Simmonds] at 29:9-22, 37:3-39:7, 75:5-79:22, 86:24-89:22

- Exhibit 27 [Wray] at 56:2-59:24, 65:4-66:4

- Exhibits 65, 66, 69 [Defendants' Deposition Exhibit Nos. 111, 114, 128]

101.     Some Plaintiffs had seen a RNPS at someone else's house before they decided to register for it:

- Exhibit 9 [Black] at 77:12-81:10, 135:6-21

- Exhibit 15 [Huey] at 78:21-81:16

102.     Other Plaintiffs saw a RNPS model on display in a store and wanted it based upon how it looked:

- Exhibit 7 [Alfaro] at 149:22-150:4

- Exhibit 18 [Mandley] at 60:20-62:14, 84:1-86:9, 87:22-88:17, 146:24-150:5

- Exhibit 21 [Nowlin] at 61:18-63:22

- Exhibit 27 [Wray] at 78:6-79:14, 148:17-150:20

103.    Some Plaintiffs purchased a second RNPS because they had a positive experience with the first one they owned:

- Exhibit 12 [Fieker] at 187:15-188:9, 197:4-198:9, 200:12-18

- Exhibit 15 [Huey] at 134:9-135:8, 139:5-140:1

- Exhibit 17 [Kaden] at 93:22-98:21

- Exhibit 20 [Nadel] at 86:9-87:6,158:20-160:3, 161:15-163:13

- Exhibit 22 [Pasternacki] at 60:13-61:17

104.    Some Plaintiffs were influenced to purchase the RNPS by positive online ratings and reviews from other parents or social media influencers:

- Exhibit 7 [Alfaro] at 30:3-33:9, 59:4-64:9, 64:15-65:8, 75:17-24, 76:15-77:20

- Exhibit 17 [Kaden] at 26:11-27:9, 54:20-57:19, 68:6-69:4, 112:20-116:11

- Exhibit 20 [Nadel] at 67:7-25, 151:3-153:12

- Exhibit 22 [Pasternacki] at 43:13-44:11

- Exhibit 24 [Shaffer] at 51:18-52:11

- Exhibit 27 [Wray] at 48:24-52:10, 58:21-59:20, 62:19-63:23

105.    Some Plaintiffs purchased the RNPS as a gift at the specific request of the gift registrant without doing much, if any, research about the product:

- Exhibit 11 [Drover] at 58:17-61:1, 67:23-25, 88:11-89:3.

- Exhibit 13 [Flores] at 39:21-47:7

- Exhibit 56 [Defendants' Deposition Exhibit No. 71]

106.    One Plaintiff had no idea what the RNPS was before receiving it as an unsolicited gift:

- Exhibit 23 [Poppe] at 69:16-70:12, 173:17-176:9

### 3.    Defendants' Advertising Was Not a Factor in Many Plaintiffs' Decisions to Purchase or Use the RNPS (Section II.H.3.)

107.    Over 25% of the Plaintiffs admitted they never saw any advertising for the RNPS before they purchased or used the product, other than the box:

- Exhibit 9 [Black] at 77:12-79:10, 84:19-86:17

- Exhibit 12 [Fieker] at 282:21-283:21

- Exhibit 14 [Hanson] at 103:20-108:23, 110:22-111:3

- Exhibit 20 [Nadel] at 74:19-76:20, 78:10-16, 149:24-151:2, 154:6-155:20, 160:16-161:20, 214:18-217:18

- Exhibit 24 [Shaffer] at 45:10-46:16, 97:13-20

- Exhibit 26 [Willis] at 112:2-113:18, 114:18-21, 116:2-117:8

108.    Many of those same Plaintiffs had already decided to purchase or register for the product, before they saw any representations on the box:

- Exhibit 9 [Black] at 77:12-79:10, 84:19-86:17

- Exhibit 12 [Fieker] at 195:18-201:7

- Exhibit 14 [Hanson] at 103:20-108:23, 165:14-166:11

- Exhibit 20 [Nadel] at 149:24-153:12

- Exhibit 24 [Shaffer] at 45:10-46:16

109.    Ten Plaintiffs do not recall even seeing the RNPS box prior to purchasing or registering for the RNPS:

- Exhibit 8 [Barton] at 213:7-219:17, 220:8-223:13

- Exhibit 13 [Flores] at 40:21-41:16, 45:13-46:16, 75:4-8, 82:1-11

- Exhibit 15 [Huey] at 135:9-138:12, 238:5-13

- Exhibit 16 [Jacoby] at 56:17-57:19, 58:19-60:12, 73:16-74:9

- Exhibit 19 [Mulvey] at 47:13-48:2, 57:7-25, 101:25-102:6

- Exhibit 18 [Mandley] at 86:15-18, 146:24-150:11

- Exhibit 21 [Nowlin] at 61:18-63:22, 142:14-143:25, 147:7-148:10,
  151:24-153:23

- Exhibit 22 [Pasternacki] at 58:6-60:12, 132:16-133:13

- Exhibit 25 [Simmonds] at 88:20-91:13, 95:21-23, 132:6-10;

- Exhibit 27 [Wray] at 149:6-150:20, 152:2-153:23

110.    Two Plaintiffs testified that the Fisher-Price brand was not a factor in their decision to purchase/use the RNPS:

- Exhibit 8 [Barton] 222:8-17

- Exhibit 17 [Kaden] 232:23-233:1

**4.    Plaintiffs used the RNPS for Multiple Purposes, Liked it or Loved it and its Features and Used the RNPS without Incident (Section II.H.4.)**

111.    Over 75% of the Plaintiffs used the RNPS as a parking spot for their infants while they did other things:

- Exhibit 9 [Black] at 140:8-142:11

- Exhibit 10 [Cuddy] at 155:5-22

- Exhibit 11 [Drover] at 75:2-24

- Exhibit 12 [Fieker] at 239:17-240:7, 241:14-242:14

- Exhibit 14 [Hanson] at 103:20-105:9, 142:6-9

- Exhibit 15 [Huey] at 173:4-174:3

- Exhibit 16 [Jacoby] at 60:15-61:11, 66:10-16

- Exhibit 17 [Kaden] at 155:1-157:11, 159:21-161:10

- Exhibit 19 [Mulvey] at 64:19-66:6

- Exhibit 20 [Nadel] at 83:14-85:7, 183:4-184:19

- Exhibit 21 [Nowlin] at 187:13-194:17, 197:4-197:22

- Exhibit 22 [Pasternacki] at 74:4-72:4; 74:4-75:24

- Exhibit 23 [Poppe] at 201:2-206:12

- Exhibit 24 [Shaffer] at 103:2-10

- Exhibit 25 [Simmonds] at 95:24-96:25, 106:17-107:21

- Exhibit 26 [Willis] at 124:22-125:24

112.    Two-thirds of the Plaintiffs sat their baby down in the RNPS to play with them:

- Exhibit 9 [Black] at 140:8-142:11

- Exhibit 8 [Barton] at 258:24-259:19

- Exhibit 10 [Cuddy] at 182:19-184:17

- Exhibit 11 [Drover] at 75:2-76:1

- Exhibit 12 [Fieker] at 237:7-238:23

- Exhibit 14 [Hanson] at 139:4-142:18

- Exhibit 15 [Huey] at 134:9-135:8, 147:3-149:23, 173:4-174:3

- Exhibit 19 [Mulvey] at 64:19-66:9

- Exhibit 20 [Nadel] at 83:14-85:7

- Exhibit 21 [Nowlin] at 187:13-189:25, 197:4-197:22;

- Exhibit 22 [Pasternacki] at

- Exhibit 23 [Poppe] at 201:2-203:17

- Exhibit 25 [Simmonds] at 95:24-99:21, 106:24-107:21

- Exhibit 26 [Willis] at 124:22-125:10

- Exhibit 27 [Wray] at 156:4-157:12, 171:23-172:7

113. Nearly 50% of the Plaintiffs used the RNPS to soothe their baby when the baby was fussy:

- Exhibit 7 [Alfaro] at 98:14-99:14, 173:20-174:5

- Exhibit 8 [Barton] at 215:9-218:6, 263:24-265:24

- Exhibit 10 [Cuddy] at 182:19-184:17

- Exhibit 14 [Hanson] at 139:4-141:4

- Exhibit 15 [Huey] at 125:10-129:1, 134:9-135:8, 148:8-149:23, 173:4-174:3

- Exhibit 16 [Jacoby] at 60:15-22, 64:2-66:5

- Exhibit 17 [Kaden] at 154:16-25

- Exhibit 22 [Pasternacki] at 75:25-76:12;

- Exhibit 25 [Simmonds] at 108:5-20, 130:25-131:25;

- Exhibit 27 [Wray] at 156:4-157:19

114. Some Plaintiffs used the RNPS to entertain their baby, for example, with the light show or the toy that came with the RNPS:

- Exhibit 10 [Cuddy] at 182:19-184:14

- Exhibit 15 [Huey] at 125:10-129:1, 134:9-135:8, 147:3-149:23, 173:4-174:3

- Exhibit 14 [Hanson] at 103:20-105:9, 139:4-142:18

- Exhibit 22 [Pasternacki] at 65:1-66:14

115. Six Plaintiffs used the same RNPS for multiple children:

- Exhibit 25 [Simmonds] at Ex. 129, 74:3-75:4

- Exhibit 7 [Alfaro] at 30:15-22

- Exhibit 8 [Barton] at 211:15-212:1

- Exhibit 11 [Drover] at 27:7-14, 75:2-76:1, 78:22-80:15

- Exhibit 16 [Jacoby] at 60:15-18, 65:10-15

- Exhibit 23 [Poppe] at 213:7-15, 214:12-25

116.    With respect to sleep, some—but not all—of the Plaintiffs used the RNPS for daytime naps (typically supervised);

- Exhibit 7 [Alfaro] at 164:3-21, 171:9-172:14, 166:19-167:9, 172:23-173:19, 152:17-21

- Exhibit 8 [Barton] at 255:8-258:23

- Exhibit 9 [Black] at 70:16-71:15, 135:12-20, 140:8-142:11

- Exhibit 10 [Cuddy] at 173:4-174:9, 182:19-184:22

- Exhibit 11 [Drover] at 76:25-77:7

- Exhibit 12 [Fieker] at 223:19-225:25

- Exhibit 15 [Huey] at 174:4-176:25, 178:4-8

- Exhibit 16 [Jacoby] at 60:15-63:10, 65:10-66:1, 75:17-18

- Exhibit 17 [Kaden] at 140:7-141:11, 143:8-145:14

- Exhibit 18 [Mandley] at 159:23-160:10, 176:17-177:6

- Exhibit 19 [Mulvey] at 64:19-66:9

- Exhibit 20 [Nadel] at 173:24-174:12, 177:8-12, 197:4-197:22

- Exhibit 21 [Nowlin] at 194:18-196:1

- Exhibit 22 [Pasternacki] at 71:23-72:4;

- Exhibit 23 [Poppe] at 88:25-92:8, 199:7-200:24, 201:2-20

- Exhibit 25 [Simmonds] at 100:5-25

- Exhibit 26 [Willis] at 122:10-14

- Exhibit 27 [Wray] at 163:11-16, 171:23-172:16.

117.    Several Plaintiffs believed in the old adage, "never wake a sleeping baby," and would also let their child sleep for periods of time in car seats, bouncers and other inclined positions:

- Exhibit 8 [Barton] at 249:19-252:9

- Exhibit 10 [Cuddy] at 74:9-77:23

- Exhibit 12 [Fieker] at 225:6-228:10

- Exhibit 14 [Hanson] at 127:1-132:4, 135:12-137:20

- Exhibit 20 [Nadel] 92:13-21; 169:11-170:8, 173:23-178:20

118.    Approximately 25% of the Plaintiffs never used the RNPS for overnight sleep:

- Exhibit 9 [Black] at 70:16-23, 135:12-20, 140:8-142:11

- Exhibit 13 [Flores] at 55:25-56:6;

- Exhibit 14 [Hanson] at 126:4-19, 136:14-21

- Exhibit 15 [Huey] at 174:4-178:3

- Exhibit 25 [Simmonds] at 28:8-21, 101:1-10

119.    Approximately 20% of the Plaintiffs used the RNPS for overnight sleep only a handful of times with one or more of their children:

- Exhibit 7 [Alfaro] at 166:9-18

- Exhibit 19 [Mulvey] at 58:20-60:12, 64:19-65:1

- Exhibit 24 [Shaffer] at 87:25-88:13; 99:13-102:10.

- Exhibit 26 [Willis] at 75:23-76:9; 118:9-17

120.    At least one Plaintiff testified how she used the RNPS with her two children differed depending on the preferences of the child:

- Exhibit 7 [Alfaro] at 161:5-163:2, 166:9-18 (son slept overnight in the RNPS but daughter did not because she didn't like it)

121.    Some Plaintiffs liked that their RNPS models could be turned on from their phones, had music, vibration, rocked automatically, or had a canopy with a light show:

- Exhibit 7 [Alfaro] at 63:17-23, 144:1-13, 145:3-146:14

- Exhibit 8 [Barton] at 213:7-13, 217:8-23, 222:18-24, 237:1-14, 264:3-265:24;

- Exhibit 9 [Black] at 75:24-77:6, 82:18-83:11

- Exhibit 12 [Fieker] at 105:14-106:2, 107:4-109:4, 187:15-188:9, 198:21-199:19, 204:7-23

- Exhibit 15 [Huey] at 125:10-129:1, 134:9-135:8, 139:10-140:1, 172:7-173:3.

- Exhibit 16 [Jacoby] at 60:15-23, 66:21-67:10

- Exhibit 17 [Kaden] at 157:12-159:4

- Exhibit 18 [Mandley] at 84:1-85:21, 87:22-88:14, 149:8-150:1

- Exhibit 21 [Nowlin] at 108:12-109:7, 140:10-22, 154:16-156:9;

- Exhibit 22 [Pasternacki] at 44:16-45:16, 60:13-61:5, 65:1-66:14

- Exhibit 25 [Simmonds] at 85:23-86:17

122.    A majority of the Plaintiffs liked the portability of the RNPS, and that it could be used for travel or moved from room to room:

- Exhibit 7 [Alfaro] at 80:13-25, 145:3-146:14, 147:22-148:1, 152:3-21

- Exhibit 8 [Barton] at 216:7-217:17

- Exhibit 10 [Cuddy] at 178:3-16, 185:12-186:6

- Exhibit 12 [Fieker] at 237:13-238:5

- Exhibit 14 [Hanson] at 142:25-143:10

- Exhibit 18 [Mandley] at 180:1-11

- Exhibit 16 [Jacoby] at 67:24-68:22

- Exhibit 17 [Kaden] at 161:11-17

- Exhibit 19 [Mulvey] at 64:19-67:1

- Exhibit 23 [Poppe] at 20:1-9, 88:25-92:16, 209:3-210:10

- Exhibit 26 [Willis] at 118:9-119:12, 125:25-126:2

- Exhibit 27 [Wray] at Ex. 165:9-166:3, 171:9-22

- Exhibit 78 [Defendants' Deposition Exhibit No. 168]

123.    At least two Plaintiffs mentioned that they liked the height of the RNPS because it was out of the reach of their pets or other children:

- Exhibit 7 [Alfaro] at 161:5-162:8

- Exhibit 19 [Mulvey] at 56:20-57:6

124.    Some Plaintiffs testified that the RNPS helped their babies with reflux or colic:

- Exhibit 7 [Alfaro] at 98:14-17, 99:2-14

- Exhibit 12 [Fieker] at 110:13-112:8

- Exhibit 15 [Huey] at 134:9-21

- Exhibit 21 [Nowlin] at 148:11-149:16, 200:25-201:8

- Exhibit 22 [Pasternacki] at 46:7-23, 75:25-76:12

- Exhibit 27 [Wray] at 153:25-154:21, 158:11-162:17

125.    A majority of the Plaintiffs used the RNPS every day for months:

- Exhibit 7 [Alfaro] at 170:25-172:22

- Exhibit 8 [Barton] at 256:2-259:18, 301:10-15

- Exhibit 10 [Cuddy] at 182:19-184:22

- Exhibit 12 [Fieker] at, 206:21-208:18, 218:7-224:6, 234:12-237:12, 246:21-247:25

- Exhibit 15 [Huey] at 185:11-22

- Exhibit 17 [Kaden] at 218:16-220:1

- Exhibit 18 [Mandley] at 176:17-177:6

- Exhibit 19 [Mulvey] at 64:19-65:8, 66:7-9

- Exhibit 20 [Nadel] at 114:24-115:9, 158:5-19, 181:24-183:9

- Exhibit 21 [Nowlin] at 187:13-196:1

- Exhibit 22 [Pasternacki] at 74:4-77:13

- Exhibit 23 [Poppe] at 201:2-202:4

- Exhibit 26 [Willis] at 67:21-69:6; 69:23-70:14; 73:22-75:31, 124:10-21

- Exhibit 27 [Wray] at 153:25-154:24, 158:11-160:10

126.    Most of the Plaintiffs liked the RNPS when they were using it:

- Exhibit 7 [Alfaro] at 29:12-30:22

- Exhibit 8 [Barton] at 267:2-24, 269:23-270:15

- Exhibit 9 [Black] at 143:6-13

- Exhibit 10 [Cuddy] at 186:8-21, 189:12-190:19

- Exhibit 12 [Fieker] at 78:10-79:15, 248:6-249:22, 251:18-252:13

- Exhibit 14 [Hanson] at 143:11-144:23

- Exhibit 15 [Huey] at 147:3-149:23

- Exhibit 16 [Jacoby] at 76:10-15

- Exhibit 17 [Kaden] at 93:2-95:25, 162:7-9

- Exhibit 18 [Mandley] at 181:22-182:16

- Exhibit 19 [Mulvey] at 68:8-20

- Exhibit 20 [Nadel] at 114:24-115:9, 184:22-187:22

- Exhibit 21 [Nowlin] at 72:8-73:24, 106:8-110:16, 201:16-203:25

- Exhibit 22 [Pasternacki] at 60:13-61:17, 140:12-23

- Exhibit 23 [Poppe] at 214:12-25, 218:19-21

- Exhibit 24 [Shaffer] at 113:2-8

- Exhibit 25 [Simmonds] at 86:21-23, 108:5-20

- Exhibit 26 [Willis] at 126:12-15

- Exhibit 27 [Wray] at 68:19-70:17, 172:25-173:2, 173:22-174:8

127. Most Plaintiffs' babies liked the RNPS:

- Exhibit 7 [Alfaro] at 175:1-6

- Exhibit 8 [Barton] at 236:22-237:14, 267:2-24; 269:23-270:15

- Exhibit 10 [Cuddy] at 151:17-152:5

- Exhibit 12 [Fieker] at 248:6-249:18, 251:18-253:12

- Exhibit 14 [Hanson] at 143:11-144:23

- Exhibit 15 [Huey] at 125:10-128:2

- Exhibit 17 [Kaden] at 162:10-16

- Exhibit 18 [Mandley] at 181:22-182:16

- Exhibit 20 [Nadel] at 184:22-187:22

- Exhibit 23 [Poppe] at 20:1-9, 214:18-20

- Exhibit 25 [Simmonds] at 86:18-20

- Exhibit 27 [Wray] at 173:3-6

- Exhibit 74 [Defendants' Deposition Exhibit No. 157]

128.    The overwhelming majority of Plaintiffs who used the RNPS testified that they did not have any issues with it.

- Exhibit 7 [Alfaro] at 174:10-25

- Exhibit 8 [Barton] at 267:2-24, 269:23-270:15, 301:2-17

- Exhibit 10 [Cuddy] at 186:8-11, 189:12-15

- Exhibit 11 [Drover] at 77:19-22

- Exhibit 12 [Fieker] at 78:10-79:15, 248:6-249:22

- Exhibit 14 [Hanson] at 143:11-144:23

- Exhibit 15 [Huey] at 186:7-188:1

- Exhibit 16 [Jacoby] at 76:3-6

- Exhibit 17 [Kaden] at 220:17-221:8

- Exhibit 18 [Mandley] at 181:22-182:16, 183:3-184:9

- Exhibit 19 [Mulvey] at 68:8-20

- Exhibit 20 [Nadel] at 184:22-187:5

- Exhibit 21 [Nowlin] at 246:7-19

- Exhibit 22 [Pasternacki] at 77:7-13, 121:13-19, 123:3-5, 140:12-23, 145:4-6

- Exhibit 23 [Poppe] at 213:7-15, 218:22-24

- Exhibit 24 [Shaffer] at 111:21:23

- Exhibit 25 [Simmonds] at 53:14-24, 108:5-109:3, 110:16-112:7

- Exhibit 27 [Wray] at 172:22-24, 200:3-201:2

129.    The majority of Plaintiffs testified that their RNPS performed as they expected it would and as the product was advertised:

- Exhibit 7 [Alfaro] at 174:10-25

- Exhibit 8 [Barton] at 267:2-24, 269:23-270:15, 301:2-17

- Exhibit 9 [Black] at 143:6-13

- Exhibit 10 [Cuddy] at 186:12-21

- Exhibit 12 [Fieker] at 248:6-249:18

- Exhibit 14 [Hanson] at 143:11-144:23, 151:12-152:3

- Exhibit 15 [Huey] at 186:7-188:11

- Exhibit 16 [Jacoby] at 76:7-9

- Exhibit 17 [Kaden] at 93:2-17, 163:15-165:1

- Exhibit 18 [Mandley] at 181:22-182:16

- Exhibit 19 [Mulvey] at 68:8-20

- Exhibit 20 [Nadel] at 184:22-187:22

- Exhibit 25 [Simmonds] at 97:18-20

- Exhibit 22 [Pasternacki] at 77:7-13

- Exhibit 23 [Poppe] at 213:25-214:11

- Exhibit 27 [Wray] at 172:17-21, 173:7-9, 173:14-21, 200:3-201:2

130.    Plaintiff Drover gave the RNPS to her daughter and son-in-law as a gift and did not use the RNPS herself. She testified that her daughter and son-in-law used the RNPS for one child without issue. Their second child passed away while in the RNPS:

- Ex. 11 [Drover] at 54:18-55:18, 57:12-60:21, 67:23-68:14, 77:19-22, 88:11-89:3

131.    With respect to the twelve Statewide Classes, all of the proposed class representative Plaintiffs who used the RNPS themselves (Plaintiffs Drover and Flores did not because they were gifts) testified that they did not have any issues with the RNPS and/or that it met expectations and performed as advertised::

- **Arizona:** Ex. 8 [Barton] at 267:2-24

- **Arkansas:** Ex. 21 [Nowlin] at 61:21-65:7, 66:13-23, 66:4-5, 66:24-67:1, 142:21-145:14, 147:7-148:10, 151:25-153:23, 156:5-9, 202:15-203:1

- **California:** Ex. 17 [Kaden] at 93:9-11, 95:9-15, 95:21-25, 162:7-9, 220:19-221:8

- **Colorado:** Ex. 22 [Pasternacki] at 77:7-13

- **Florida:** Ex. 15 [Huey] at 72:3-74:5, 74:7-75:5, 78:21-81:16, 86:1-88:23, 127:16-129:1, 134:9-140:18, 147:3-149:23, 174:4-178:3, 186:7-188:11, 186:24-188:11, 189:18-20

- **Iowa:** Ex. 14 [Hanson] at 143:11-144:23, 151:12-152:;

- **New Jersey:** Ex. 20 [Nadel] 114:24-115:9, 184:22-187:5,185:15-187:5

- **New York:** Ex. 7 [Alfaro] at 29:12-30:22, 174: 10-176:6

- **New York:** Ex. 19 [Mulvey] at 68:8-20

- **Tennessee:** Ex. 26 [Willis] at 71:16-72:1, 75:23-76:9; 118:9-119:12, 122:10-14, 124:22-126:12-15

- **Texas:** Ex. 9 [Black] at 143:6-13

- **Washington:** Ex. 24 [Shaffer] at 55:8-65:5, 72:12-76:14, 100:12-102:10, 103:2-104:12, 111:21-23, 113:6-8

**5.    Plaintiffs Had Different Knowledge About Sleep (Section II.H.5.)**

132.    Almost all of the Plaintiffs were aware that their babies should be placed to sleep on their backs, but many were not told anything with respect to whether the baby must also be flat or whether a slight incline was acceptable:

- Exhibit 7 [Alfaro] at 56:9-58:24, 81:16-25

- Exhibit 8 [Barton] at 49:5-50:18, 118:7-119:4

- Exhibit 9 [Black] at 60:19-63:11, 64:6-23

- Exhibit 14 [Hanson] at 42:24-43:20, 54:19-55:10

- Exhibit 18 [Mandley] at 54:13-57:1, 69:13-70:10

- Exhibit 19 [Mulvey] at 34:21-36:13, 49:16-50:15

- Exhibit 20 [Nadel] at 58:3-59:19, 69:17-70:22

- Exhibit 22 [Pasternacki] at 33:3-34:18

- Exhibit 23 [Poppe] at 91:13-20, 92:22-95:19, 99:12-101:1

- Exhibit 24 [Shaffer] at 31:17-33:17, 36:4-37:13, 41:5-21

- Exhibit 25 [Simmonds] at 22:13-27:10, 81:13-84:2

133.    Nearly 25% of the Plaintiffs were told by their pediatrician or a medical professional that a baby could sleep at an incline:

- Exhibit 10 [Cuddy] at 74:9-77:23

- Exhibit 12 [Fieker] at 110:11-112:11

- Exhibit 16 [Jacoby] at 38:4-39:20

- Exhibit 21 [Nowlin] at 75:5-23

- Exhibit 27 [Wray] at 59:3-12, 60:22-62:18, 160:14-162:17

134.    At least two Plaintiffs' pediatrician recommended inclined sleep or the RNPS for sleep:

- Exhibit 27 [Wray] at 59:3-12, 60:22-62:18, 160:14-162:17.

- Exhibit 16 [Jacoby Depo.] at 37:23-39:16

135.    Three Plaintiffs testified that they read in baby books that babies could sleep at a slight incline:

- Exhibit 15 [Huey] at 72:20-74:3

- Exhibit 17 [Kaden] at 50:5-54:9, 57:20-61:24, 112:20-116:22

- Exhibit 27 [Wray] at 48:24-52:10, 59:3-12

136.    Some Plaintiffs were advised that their babies should <u>not</u> sleep at an incline:

- Exhibit 12 [Fieker] at 63:7-65:7, 74:12-78:9, 90:8-92:19

- Exhibit 15 [Huey] at 36:20-39:5, 72:3-19

- Exhibit 26 [Willis] at 46:17-48:19, 141:8-15

### 6.    Most Plaintiffs Learned of the Recall Independent of Their Attorneys (Section II.H.6.)

137.    Some Plaintiffs received an email about the Recall from a third-party retailer:

- Exhibit 8 [Barton] at 277:15-278:10, 279:23-283:2

- Exhibit 13 [Flores] at 57:24-59:18

- Exhibits 57, 72 [Defendants' Deposition Exhibit Nos. 90, 140]

138.    Some Plaintiffs learned about the Recall from watching the news, from social media, or friends:

- Exhibit 7 [Alfaro] at 26:4-29:16

- Exhibit 9 [Black] at 153:16-155:4, 162:13-163:4, 164:20-165:19

- Exhibit 11 [Drover] at 89:4-10, 90:21-91:14, 95:2-8

- Exhibit 12 [Fieker] at 275:14-276:1, 278:8-16

- Exhibit 14 [Hanson] at 150:16-151:2

- Exhibit 15 [Huey] at 241:2-242:15

- Exhibit 16 [Jacoby] at 78:13-79:9

- Exhibit 18 [Mandley] at 105:1-108:16, 186:11-14

- Exhibit 19 [Mulvey] at 95:10-97:22

- Exhibit 20 [Nadel] at 193:15-194:10

- Exhibit 21 [Nowlin] at 229:5-230:5

- Exhibit 22 [Pasternacki] at 86:9-89:14

- Exhibit 23 [Poppe] at 140:9-141:14, 222:16-21, 228:11-22

- Exhibit 27 [Wray] at 17:15-18:22, 20:23-22:7, 137:10-142:3, 176:15-177:3

- Exhibit 26 [Willis] at 133:13-134:5

- Exhibit 60 [Defendants' Deposition Exhibit No. 100]

139.    Several Plaintiffs contacted Fisher-Price to participate in the Recall, and most who contacted Fisher-Price were sent kits so they could participate:

- Exhibit 7 [Alfaro] at 126:12-16; 181:25-184:11, 191:11-192:4;

- Exhibit 9 [Black] at 148:19-151:21, 153:16-154:13 [did not own a RNPS and did not receive a hub kit]

- Exhibit 22 [Pasternacki] at 88:9-94:3, 95:5-96:6

- Exhibit 16 [Jacoby] at 78:13-79:15, 80:13-83:8

- Exhibit 26 [Willis] at Ex. 15, 134:6-137:5

- Exhibit 23 [Poppe] at 140:9-141:5, 222:16-21, 228:11-237:11, 241:5-242:15

- Exhibits 47, 48-49, 61 [Defendants' Deposition Exhibit Nos. 25, 25A, 15, 101]

140.    Some Plaintiffs who contacted Fisher-Price about the Recall ultimately elected not to participate:

- Exhibit 16 [Jacoby] at 80:13-85:1

- Exhibit 22 [Pasternacki] at 88:9-94:3, 95:5-96:6

- Exhibit 26 [Willis] at 135:5-136:12

141.    Two Plaintiffs participated relatively easily and received something of value as a result:

- Exhibit 7 [Alfaro] at 126:12-16; 181:24-184:11, 190:18-212:20

- Exhibit 23 [Poppe] at 140:9-141:5, 222:16-21, 228:11-237:11, 241:5-242:15

- Exhibits 48-49, 62, 63 [Defendants' Deposition  Exhibit Nos. 25, 25-A, 105, 108]

142.    Plaintiff Alfaro testified that participating in the Recall was not any different than purchasing products online, and the instructions provided by Fisher-Price "were helpful:"

- Exhibit 7 [Alfaro] at 126:12-16, 181:24-1834:11, 190:11-207:8

**7.    Most Plaintiffs Only Became Involved In This Litigation After They Were Solicited by Their Attorneys, With Whom They Had a Personal Relationship (Section II.H.7.)**

143.    Seventeen out of the 21 Plaintiffs were recruited by their attorneys to participate in this lawsuit.  Of those, their attorney is a personal friend (and one is his attorney-friend's "go to" state plaintiff), family member, friend of a friend, or employer, or Plaintiffs responded to an attorney advertisement seeking a class representative:

- Exhibit 8 [Barton] at 155:16-172:10

- Exhibit 9 [Black] at 98:22-103:11

- Exhibit 10 [Cuddy] at Ex. 33, 10:1-13:13, 104:18-111:5

- Exhibit 13 [Flores] at 17:20-19:1

- Exhibit 12 [Fieker] at 125:15-129:3, 140:7-142:6

- Exhibit 14 [Hanson] at 20:17-23:18, 69:11-74:10

- Exhibit 15 [Huey] at 96:8-98:8, 100:7-104:14, 112:11-114:15; 147:3-148:7

- Exhibit 16 [Jacoby] at 87:20-92:25

- Exhibit 17 [Kaden] at 169:2-172:23; 173:6-24, 175:16-25

- Exhibit 18 [Mandley] at 65:17-69:5, 93:2-22, 95:3-97:16, 103:12-106:12

- Exhibit 19 [Mulvey] at 70:13-73:4

- Exhibit 21 [Nowlin] at 106:8-110:16

- Exhibit 23 [Poppe] at 24:1-19, 114:10-117:9, 119:17-124:5

- Exhibit 24 [Shaffer] at 55:21-68:13, 72:12-78:10

- Exhibit 25 [Simmonds] at 48:17-53:24

- Exhibit 26 [Willis] at 63:1-67:18

- Exhibit 27 [Wray] at 164, 87:7-98:3

144.    The four Plaintiffs who contacted counsel about getting involved in the lawsuit did so after reading about lawsuits already having been filed, or because they had been looking for a potential class action to get involved in:

- Ex. 7 [Alfaro] at 104:18-111:9, 113:4-117:13;

- Ex. 12 [Fieker] at 125:12-129:20, 140:7-142:6

- Ex. 20 [Nadel] at 101:12-105:10

- Ex. 22 [Pasternacki] at 99:13-101:23, 102:22-104:22

145.    Many Plaintiffs were asked at their depositions to identify claims made by Defendants about the safety of the RNPS.  Of those who were asked, many could not identify

any express safety claims, and simply assumed that the RNPS was safe because it was sold by a well-known company like Fisher-Price, or because it was sold at all:

- Ex. 7 [Alfaro] at 226:21-227:4, 218:11-219:24

- Ex. 8 [Barton] at 314:5-19

- Ex. 13 [Flores] at 82:1-6, 83:6-13, 87:5-24

- Ex. 14 [Hanson] at 133:3-134:3, 150:2-15

- Ex. 16 [Jacoby] at 110:11-111:7

- Ex. 18 [Mandley] at 150:24-151:9

- Ex. 19 [Mulvey] at 101:5-102:25

- Ex. 22 [Pasternacki] at 128:1-130:2

- Ex. 23 [Poppe] at 70:2-9, 174:25-177:8, 224:6-16

- Ex. 25 [Simmonds] at 117:13-119:9

- Ex. 27 [Wray] at 203:6-204:13

## V.     BLOG POSTS ABOUT THE RNPS

146.    Exhibit 45 hereto lists blog posts that published by bloggers about the RNPS.  I clicked on the links in the emails I reviewed various blog posts pertaining to the RNPS, true and correct copies of which are attached hereto as **Exhibits 82 through 103[3]**, identified more specifically below.

- **Exhibit 82**: "A Busy Mommy – My Baby Slept"

    http://abusymommy.com/2010/02/my-baby-slept-fisher-price-rock-n-play-sleeper-review/ (My Baby Slept)

---

[3] Exhibits 79-81 are addressed below.

- **Exhibit 83**: "Beauty, Baby, and a Budget"

  http://www.whitjxoxo.com/2017/02/07/my-favorite-products-for-new-moms/ (Beauty, Baby, and Budget)

- **Exhibit 84**: "Being Mrs. Beer – Life. Love. Parenting"

  https://www.beingmrsbeer.com/mom-baby-must-haves-babbleboxx/

  (Being Mrs. Beer)

- **Exhibit 85**: "Chit Chat Mom – Travel. Entertainment. Parenting and

  Much More!" https://www.chitchatmom.com/2017/01/the-best-products-for-new-moms.html (Chit Chat Mom)

- **Exhibit 86**: "Clarks Condensed"

  https://www.clarkscondensed.com/products-i-wish-i-had-with-first-baby/

  (Clarks Condensed)

- **Exhibit 87**: "Fresh Mommy Blog x Tabitha Blue"

  https://freshmommyblog.com/babbleboxx-unboxing/ (Fresh Mommy

  Blog)

- **Exhibit 88**: "GenPink – Gen Y gals sharing their lives about travel, fitness,

  family, events and more" https://www.genpink.com/babybabbleboxx/

  (GenPink)

- **Exhibit 89**: "Grrfeisty" https://grrfeisty.com/2017/02/adorable-gifts-for-new-mom-and-baby.html (GrrFeisty)

- **Exhibit 90**: "It Starts with Coffee – Blog by Neely Moldovan – Lifestyle,

  Beauty, Motherhood, Wellness, Travel"

https://www.itstartswithcoffee.com/babbleboxx-review/ (It Starts with Coffee)

- **Exhibit 91**: "Kaylee Eylander – Recipes | DIY | Baby | Family" https://www.kayleeeylander.com/DIY-tips/newborn-mommy-survival-kit-babygear-review/ (Kaylee Eylander)

- **Exhibit 92**: "Love Inc." https://loveincmag.com/bump-baby-must-products-get-early-years/ (Love Inc.)

- **Exhibit 93**: "Malory Anne – Reason to Anchor" http://www.maloryanne.com/2017/02/the-best-mom-baby-essentials.html (Malory Anne)

- **Exhibit 94**: "Mama Knows It All" https://mamaknowsitall.com/best-baby-products/ (Mama Knows It All)

- **Exhibit 95**: "Much Most Darling – Realistic, Sustainable & Vegan Motherhood Through the Eyes of a Boy Mom" https://www.muchmostdarling.com/2017/02/4th-trimester-favorites-baby-toddler-mom.html (Much Most Darling)

- **Exhibit 96**: "Must Have Mom – Having It All and Showing You How" (Must Have Mom)

- **Exhibit 97**: "My Life As A Southern Mother" http://www.asouthernmother.com/2017/02/great-baby-shower-gifts-for-every-budget.html (Southern Mom)

- **Exhibit 98**: "Nashville Wifestyles" https://nashvillewifestyles.com/best-gift-ideas-new-mom-coming-lady-just-baby/ (Nashville Wifestyles)

- **Exhibit 99**: "New Age Mama – Reviews & Giveaways"
  http://newagemama.blogspot.com/2010/02/fisher-price-rock-n-play-sleeper-review.html (New Age Mama)

- **Exhibit 100**: "Paperclips & Pacis – Balancing Business & Family"
  http://www.lindsaytampabay.com/fisher-price-my-little-snuggabunny-rock-n-play-sleeper/ (Paperclips & Pacis)

- **Exhibit 101**: "Pulling Curls – Pregnancy & Home Life Untangled"
  https://www.pullingcurls.com/new-baby-needs-vs-wants/ (Pulling Curls)

- **Exhibit 102**: "Shop Girl Daily" https://www.shopgirldaily.com/the-best-brands-new-moms-need-to-know/ (Shop Girl Daily)

- **Exhibit 103**: "The Tip Toe Fairy" https://thetiptoefairy.com/must-haves-goodies-for-the-new-mom-from-babbleboxx/ (Tip Toe Fairy)

147. Several bloggers wrote about using the RNPS as a parking spot for their baby while they did something else. *See, e.g.,* Ex. 96 (Must Have Mom; Being Mrs. Beer) ["[F]or me it's been so helpful to calm Ella while I'm cooking dinner.  I can set her up in the kitchen with me and let her hang out while I'm cooking—it's great because I can keep an eye on her and know she's safe."]; Ex. 89 (GrrFeisty; Mama Knows It All) ["As much as I remember loving to hold and snuggle my daughter when she was a baby, I also remember there were times Mama needed a break!"]; Ex. 95 (Much Most Darling; My Baby Slept) ["As much as I remember loving to hold and snuggle my daughter when she was a baby, I also remember there were times Mama needed a break!"]; [We "used it around the house.  It was great to have a place that I could set him down when I need to answer the door, or cook supper."]; Ex. 99 (New Age Mama).

148.    Using the RNPS to soothe a fussy baby was another use of the RNPS that
bloggers shared with their audiences.  *See, e.g.,* Ex. 96 (Must Have Mom); Ex. 83 (Beauty, Baby,
and Budget); Ex. 89 (GrrFeisty); Ex. 90 (It Starts with Coffee); and Ex. 99 (New Age Mama).

149.    Bloggers posted about using the RNPS for daytime and nighttime sleep.  *See, e.g.,*
Ex. 96 (MustHave Mom); Ex. 83 (Beauty, Baby, and Budget; Ex. 85 (Chit Chat Mom); Ex. 89
(GrrFeisty); Ex. 90 (It Starts with Coffee); Ex. 91 (Kaylee Eylander); Ex. 93 (Malory Anne); Ex.
95 (Much Most Darling); Ex. 82 (My Baby Slept); Ex. 98 (Nashville Wifestyles); Ex. 99 (New
Age Mama); Ex. 100 (Paperclips & Pacis); Ex. 101 (Pulling Curls); Ex. 102 (Shop Girl Daily);
and Ex. 103 (Tip Toe Fairy).

150.    Bloggers described the RNPS as a place for babies with reflux.  *See, e.g.,* Ex. 96
(Must Have Mom); Ex. 86 (Clarks Condensed); Ex. 100 (Paperclips & Pacis).

151.    Some blogs did not refer to sleep at all, and at least one did not even refer to the
product as a "sleeper," but rather, simply the "Rock 'n Play."  *See* Ex. 88 (GenPink).

152.    One Blogger who write she would most likely not use the RNPS for overnight
sleep still recommended the product, saying that "every mom needs" one.  *See* Ex. 85 (Chit Chat
Mom).

153.    Many blog posts that showed RNPS packaging showed a photo of a baby playing.
*See* Ex. 103 (Tip Toe Fairy).

154.    Many of the posts showed babies who were awake and/or playing in the RNPS.
*See, e.g.,* Ex. 96 (MustHave Mom); Ex. 83 (Beauty, Baby, and a Budget); Ex. 84 (Being Mrs.
Beer); Ex. 88 (GenPink); Ex. 89 (GrrFeisty); Ex. 91 (Kaylee Eylander).  Many posts contained
photographs of babies awake and/or playing in the RNPS.

155.    One blogger called the RNPS an "entertainment center."  *See* Ex. 89 (GrrFeisty).

156.    Bloggers had high praise for the RNPS.  Different bloggers described the RNPS as:

- One of their "all time favorite products for new moms"  *See* Ex. 83 (Beauty, Baby, and Budget).

- A "magical unicorn" that is the blogger's "best friend"  *See* Ex. 95 (Much Most Darling).

- A "must have for so many reasons." *See, e.g.,* Ex. 84 (Being Mrs. Beer); Ex. 91 (Kaylee Eylander).

157.    Some of the bloggers mentioned having heard about the RNPS from others, like from friends.  (*See* Ex. 87 (Fresh Mommy Blog); Ex. 90 (It Starts with Coffee); Ex. 91 (Kaylee Eylander ["another new mom told me that 'I had to get one.'"]); Ex. 92 (Love Inc.); Ex. 88 (GenPink)).

158.    Other bloggers read positive online reviews about the product, (*See* Ex. 100 (Paperclips & Pacis)) and commented that the RNPS was "by far, the #1 babygear item I hear people recommend,"  (*See* Ex. 86 (Clarks Condensed)) and a product that "[a]lmost every momma . . . raves about." *See* Ex. 98 (Nashville Wifestyles).

159.    At least one blogger discussed using the RNPS with at least two children, and described the product as "key" in the first few months.  *See* Ex. 93 (Mallory Anne).

## VI.    <u>ADDITIONAL EXHIBITS</u>

160.    Attached hereto as **Exhibit <u>79</u>** is a true and correct copy of a document produced by Fisher-Price in this action, titled "Premium Baby Gear Segmentation – Topline Insights from Phase 1 Qualitative" (Bates stamped FSHR0017737-FSHR0017747) that was prepared by Chadwick Martin Bailey—a third-party market research firm—for Fisher-Price in late 2018.

161.    Attached hereto as **Exhibit <u>80</u>** is a true and correct copy of a report prepared by a third party Mintel, entitled "Baby Durables: U.S., April 2016," which can be purchased here: https://store.mintel.com/report/baby-durables-us-april-2016.

162.    Attached hereto as **Exhibit <u>81</u>** is a true and correct copy of the docket for the matter entitled *Patton v. Topps Meat Co., LLC,* No. 07-CV-00654(S)(M), 2010 WL 9432381, *8 (W.D.N.Y. May 27, 2010) ("*Patton*"), which I obtained from the Western District of New York's ECF system.

163.    Attached hereto as Exhibit <u>104</u> is a true and correct copy of relevant excerpts from the December 9, 2019 Status Conference transcript in this action.

164.    Although Defendants requested that Plaintiffs produce receipts for their purchase of the RNPS, fewer than 25% of Plaintiffs produced one.

## VII.    <u>WRONGFUL DEATH ACTIONS</u>

165.    Wrongful death actions have been filed by parents of infants who died while in the RNPS.  The dispute in each of these cases is whether any injury occurred "because of the RNPS" or simply "while in the RNPS."  Several of these cases have been dismissed, and none of them has gone to trial.  I am aware of these cases and their case status as a result of my representation of the Defendants and my direct communications with litigation counsel in those matters (Proskauer and Greenberg Traurig).

166.    Plaintiff Drover's daughter and son-in-law have filed a wrongful death action against Defendants.  Whether the RNPS contributed to the death of Plaintiff Drover's grandchild has not yet been adjudicated.

167.    In each of these wrongful death lawsuits, plaintiffs have alleged in their complaints that their infants died while in a Fisher-Price RNPS.  To date, after discovery

commenced, plaintiffs in four of the lawsuits either dismissed or have agreed to dismiss their complaints because it was determined that the inclined product was <u>not</u> a Fisher-Price RNPS.

     I declare under penalty of perjury under the laws of United States that the foregoing is true and correct.  Executed on June 16, 2021, in Costa Mesa, California.

Adrianne E. Marshack

400243672