**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

IN RE: ROCK 'N PLAY SLEEPER
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION

MDL No. 1:19-md-2903

Hon. Geoffrey W. Crawford

This Document Relates to: ALL CASES

<u>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
EXCLUDE THE DECLARATION AND OPINIONS OF PLAINTIFFS' EXPERTS
BRUCE SILVERMAN AND DR. J. MICHAEL DENNIS (ECF 222)**</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     LEGAL STANDARD...........................................................................................2

III.    ARGUMENT .......................................................................................................4

        A.   The Court Should Deny the Motion to Exclude Dr. Dennis' Survey and Opinions .......4

             1.   The Dennis Survey Replicates Marketplace Conditions ................................... 4

             2.   Courts Routinely Hold that Defendants' "Bias" and "Control" Arguments Go to the Weight of a Survey, Not Admissibility ...................................... 7

             3.   Dr. Dennis' Survey Is Clearly Relevant to the Issues in This Case ................. 13

        B.   Mr. Silverman's Report and Opinions are Admissible .................................................16

             1.   Mr. Silverman is Qualified to Offer his Opinions............................................ 17

             2.   Mr. Silverman's Opinions Are Reliable Because They Are Based on Application of His Specialized Experience to the Facts of This Case ................................. 21

             3.   Mr. Silverman's Opinions Are Relevant to the Issues Before the Court ......... 24

             4.   Mr. Silverman Does Not Impermissibly Opine on Defendants' Intent............ 24

IV.     CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Arista Recs. LLC v. Lime Grp. LLC*,
  No. 6-CV-5936(KMW), 2011 WL 1674796 (S.D.N.Y. May 2, 2011) ............................ 17, 19

*Bailey v. Rite Aid Corp.*,
  338 F.R.D. 390 (N.D. Cal. 2021) ................................................................................. 18, 22

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) ................................................................................................... 3

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal. App. 4th 663 (2006) .......................................................................................... 22

*Consumer Advocs. v. Echostar Satellite Corp.*,
  113 Cal. App. 4th 1351 (2003) ....................................................................................... 22

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ............................................................................................. 3, 11, 16

*Dzielak v. Whirlpool Corp.*,
  2017 WL 1034197 ............................................................................................................ 9

*Fero v. Excellus Health Plan, Inc.*,
  502 F. Supp. 3d 724 (W.D.N.Y. 2020) .......................................................................... 3, 4

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) .............................................................................................. 6

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  326 F.R.D. 592 (N.D. Cal. 2018) ................................................................................... 11

*FLIR Sys., Inc. v. Fluke Corp.*,
  2012 WL 13051121 (D. Or. Nov. 5, 2012) ..................................................................... 18

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  618 F.3d 1025 (9th Cir. 2010) ........................................................................................ 11

*George Nelson Found. v. Modernica, Inc.*,
  12 F. Supp. 3d 635 (S.D.N.Y. 2014) .............................................................................. 14

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) .......................................................................... 11

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  2017 WL 10399343 (C.D. Cal. Nov. 17, 2017) .............................................................. 19

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2017 WL 2664199 (S.D.N.Y. June 20, 2017) ........................................................ 9

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ................................................................ 12

*In re Scotts EZ Seed Litig.*,
   2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) ................................................... passim

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
   299 F.3d 1242 (11th Cir. 2002) ............................................................................ 5

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .............................................................................. 16, 18, 20

*L & F Prod., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.*,
   845 F. Supp. 984 (S.D.N.Y. 1994) ........................................................................ 8

*M.B. ex rel. Scott v. CSX Transp., Inc.*,
   130 F. Supp. 3d 654 (N.D.N.Y. 2015) ................................................................... 3

*McCullock v. H.B. Fuller Co.*,
   61 F.3d 1038 (2d Cir. 1995) ................................................................................. 3

*Morales v. Kraft Foods Grp., Inc.*,
   2017 WL 2598556 (C.D. Cal. June 9, 2017) ........................................................ 12

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
   107 Cal. App. 4th 1336 (2003) ........................................................................... 22

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
   7 F. Supp. 3d 955 (N.D. Cal. 2014) ...................................................................... 8

*Oshana v. Coca-Cola Co.*,
   No. 04-cv-3596, 2005 WL 1661999 (N.D. Ill. July 13, 2005) ................................. 15

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
   647 N.E.2d 741 (N.Y. 1995) ............................................................................... 14

*Packard v. City of New York*,
   No. 15-CV-7130(AT)(SDA), 2020 WL 1479016 (S.D.N.Y. Mar. 25, 2020) ............. 17, 19, 20

*Price v. L'Oreal USA, Inc.*,
   No. 1:17-CV-614(LGS), 2020 WL 4937464 (S.D.N.Y. Aug. 24, 2020) ............. 16, 17, 22, 23

*Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche Inc.*,
   2006 WL 2588002 (S.D.N.Y. Sept. 6, 2006) .......................................................... 8

*Schering Corp. v. Pfizer Inc.*,
   189 F.3d 218 (2d Cir. 1999) ................................................................ 4

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................ 16

*Sentius Int'l, LLC v. Microsoft Corp.*,
   2015 WL 331939 (N.D. Cal. Jan. 23, 2015) ....................................... 12

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ............................................................. 11

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009) .................................................................. 14

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24, 731 N.E.2d 608 (N.Y. 2000) ...................................... 14

*Svenson v. Google*,
   2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) .................................... 12

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
   648 F. App'x 609 (9th Cir. 2016) ........................................................ 11

*THOIP v. Walt Disney Co.*,
   690 F. Supp. 2d 218 (S.D.N.Y. 2010) ................................................ 12

*Tiffany and Co. v. Costco Wholesale Corp.*,
   127 F. Supp. 3d 241 (S.D.N.Y. 2015) .................................................. 4

*Victoria's Secret Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
   2009 WL 959775 n.9 (S.D.N.Y. Apr. 8, 2009) .................................... 4

**Rules**

Federal Rule of Evidence 702 ................................................................. 2, 3, 16

**Other Authorities**

Reference Guide on Survey Research, 2011 WL 7724258 ............................ 7

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
   2019 WL 8645577 (C.D. Cal. Jun. 20, 2019) ..................................... 19

*O'Bannon v. Nat'l Collegiate Athletic Ass'n.*,
   2014 WL 6862783 (N.D. Cal. 2014) ..................................................... 8

# I.    INTRODUCTION

Plaintiffs respectfully submit this memorandum of law in opposition to Fisher-Price, Inc. and Mattel, Inc.'s ("Defendants") Motion to Exclude the Declaration and Opinions of Bruce Silverman and Dr. J. Michael Dennis (ECF 222, the "Motion").[1]  For the reasons set forth below, the Court should deny Defendants' Motion in its entirety.

Dr. J. Michael Dennis holds B.A. and M.A. degrees from the University of Texas, and a Ph.D. in political science awarded by the University of Chicago.  Since obtaining his Ph.D. in 1992, Dr. Dennis has spent his entire career conducting research surveys, including numerous surveys in the context of litigation.  Dr. Dennis is a nationally recognized expert on survey research methods, with a particular focus on online surveys of household populations.  He has conducted more than 100 statistical studies using online data collection.  He has been admitted as a survey expert in numerous cases in that time, in state and federal courts, many of which included surveys regarding consumer perception and materiality of product claims.  Dr. Dennis conducted a survey to assess whether consumers were misled by the challenged product claims in this case, and to assess whether the alleged misrepresentations and omissions were material to consumers' purchasing decisions.  Dr. Dennis conducted his survey and reported his results, which were filed with his declaration in support of class certification. Dennis Decl., ECF 202-2.  Dr. Dennis used established, reliable methods to conduct his survey in this case and his results directly show that materiality is capable of determination on a class-wide basis.

---

[1] Citations herein to specific pages or text of the Motion are located in Defendants' Memorandum of Law in support thereof, ECF 222-1.

Mr. Bruce Silverman has had a lengthy, distinguished career in the marketing and advertising industry, which dates back to 1967. In addition to the ad agencies for which he worked, he has also served as officer and/or director of advertising industry associations, held teaching positions at numerous universities, and been recognized with several industry awards for his advertising achievements. Mr. Silverman's more than fifty years in the advertising industry has equipped him with a unique level of experience that enables him to accurately gauge consumer sentiment related to advertising. Mr. Silverman applied this experience to an extensive library of discovery, pleadings, depositions, and other materials related to this case to opine on how consumers would view the marketing materials used by Defendants to sell the Rock n' Play Sleeper ("RNPS") during the proposed class period. These opinions were submitted to the Court in his declaration in support of class certification. Silverman Decl., ECF 202-3. Mr. Silverman's real-world experience has enabled him to form a method by which he can evaluate marketing materials. This, combined with his unique understanding of consumer preferences, qualifies him to opine on consumer perception of Defendants' marketing, and help prove that such can be established on a class-wide basis in this action.

As detailed below, Defendants' arguments for the exclusion of these well-qualified experts whose opinions are reliable, clearly relevant to the key issues in this case, and will aid their evaluation, lack merit, and, at best, go to the weight to be given to the opinions, not their admissibility. Thus, Defendants' Motion should be denied in all respects.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Evidence 702, expert testimony is admissible where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2

> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The current form of Rule 702, originally promulgated in 1972, was further amended to conform with a trilogy of Supreme Court cases beginning with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "Per *Daubert* and its progeny, a court's Rule 702 inquiry involves the assessment of three issues: (1) the qualifications of the expert, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of that about which the expert intends to testify." *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 749 (W.D.N.Y. 2020) (citation and quotation marks omitted). "As the courts and Advisory Committee have made clear, 'the rejection of expert testimony is the exception rather than the rule.'" *M.B. ex rel. Scott v. CSX Transp., Inc.*, 130 F. Supp. 3d 654, 665 (N.D.N.Y. 2015) (quoting *Fed. R. Evid. 702*, Advisory Committee's Note). "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995). "[C]ontentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony. A district court has discretion under Federal Rules of Evidence 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citation and internal quotations omitted).

## III.   ARGUMENT

### A. The Court Should Deny the Motion to Exclude Dr. Dennis' Survey and Opinions

Defendants move to exclude Dr. Dennis' survey and opinions based on various purported methodological criticisms, all of which should be rejected.  For instance, Defendants argue that Dr. Dennis failed to "replicate realistic marketplace conditions" and that his survey generated a variety of biases.  Mot. 6-15.  But the well-established law of this Circuit is that methodological criticisms of consumer surveys go to the weight of the evidence and do not affect admissibility. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 228 (2d Cir. 1999) (Sotomayor, J.) ("[E]rrors in methodology [of consumer surveys]…go only to the weight of the evidence."); *Tiffany and Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 250 (S.D.N.Y. 2015) (criticisms that survey expert "should have surveyed a different population of consumers" and that "study was not designed in a way that approximated actual marketplace conditions," "goes to the weight, rather than the admissibility"); *Victoria's Secret Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, 2009 WL 959775, at *11 n.9 (S.D.N.Y. Apr. 8, 2009) (holding criticism that consumer survey "failed to incorporate a control group" "bear[s] exclusively on the weight to be given the survey rather than bearing on an admissibility determination").  "As the courts and Advisory Committee have made clear, 'the rejection of expert testimony is the exception rather than the rule.'"  *Fero*, 502 F. Supp. 3d at 749 (citations omitted).

#### 1. The Dennis Survey Replicates Marketplace Conditions

In any event, Defendants' argument that the Court should reject Dr. Dennis' survey and opinions because he supposedly failed to replicate real world marketplace conditions (Mot. 8-10) is incorrect.  Specifically, while Defendants assert that Dr. Dennis limited "consumers' view to only certain portions of the packaging," Dr. Dennis showed respondents the *relevant* panels of the

4

packaging and gave them the ability to enlarge and review each of the panels. *See* Dennis Decl., ¶ 92 ("I then showed the respondents the front of the litigated product … [and] instructed the respondent to 'examine it like you are shopping.") and ¶ 93 ("I also showed the respondent the other panels of the packaging, giving respondents the option to click on the image to enlarge it."). This is entirely proper. *See* Reply Declaration of Dr. J. Michael Dennis, submitted herewith. ("Dennis Reply Decl.") ¶ 67.

Defendants mischaracterize Dr. Dennis' deposition testimony when they claim he "admitted" he limited the packaging survey participants could view to "just those that supposedly support Plaintiffs' claim." Mot. 9. In fact, Dr. Dennis explained that he did not use the entirety of the packaging because he felt the user experience was getting cluttered and because literature on consumer research shows that "the front of panels of products make a disproportionate impact on consumers." Ex. A. (Dennis Tr.) 271:16-278:23. None of the cases Defendants cite in the first paragraph of Section A.1. of their Motion, nor those cited in the rebuttal report of Defendants' high-priced expert, Dr. Ran Kivetz ("Kivetz Rebuttal Report"), hold that a survey must use the entire image of the packaging to be admissible. Mot. 8-9 and Kivetz Rebuttal Report ¶ 125 n.131, ECF 223-1. The case Dr. Kivetz quotes in his Rebuttal Report – *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002) – actually supports Plaintiffs' position. There, the Eleventh Circuit stated that courts "should consider context, [but] may not *assume* context," and added: "[t]he problem with the district court's approach is the assumption that consumers will be exposed to every advertisement in a campaign." *Id*. Defendants' position on exclusion asks this Court to *assume* that every consumer saw the entirety of the packaging, but this is not the case, where, as here, many purchased the RNPS online and did not see everything on all facets of the packaging.

Defendants' reliance on *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), is misplaced because the case is entirely distinguishable.  In *Fink*, the plaintiffs brought false advertising claims based "upon the *specific* text of a *specific* advertisement." *Id*. at 742.  The plaintiffs failed to support that claim with examples of the advertising that contained all of the alleged misstatements, and the one example they did provide excluded "multiple disclaimers and explanatory language" that directly addressed the claimed misstatements. *Id*. at 741 & n. 2.  The district court dismissed, and the Second Circuit affirmed, holding that "the allegations of the Complaint are materially inconsistent with the sole advertisement Plaintiffs have submitted." *Id*. at 742.  This is not the case here, where Defendants allege fault for not including a few photographs.  Plaintiffs' case does not rest on specific text from a single specific advertisement, but an overall marketing strategy that told parents the RNPS was safe for use with babies, when, in fact, the product posed significant safety risks when used as instructed.  As noted numerous times before, consistently, across all models sold in the United States, the RNPS was always called a "sleeper" and never warned that it posed a danger when used for infant sleep.

Defendants' criticism of Dr. Dennis' disclaimer is thus incorrect and unsupported by law.  Dr. Dennis' safety warning is virtually identical to the one proposed by Plaintiffs' damages expert Colin Weir.  *Compare* Weir Decl. ¶ 28, ECF 85-2 ("This inclined infant sleeper carries the risk of infant fatality or other serious health problems) *with* Dennis Decl. ¶ 103 ("This sleeper product carries the risk of infant fatalities or other serious health problems.").  Earlier in the case, Defendants and their highly-compensated team of experts similarly critiqued Mr. Weir's proposed safety warning.  *See* Toubia Decl. ¶¶ 20-21, 36-39, 41, 44-45, ECF 166-3.  The Court rejected Defendants' attack and correctly concluded that their criticism of the safety warning goes to "weight but does not justify exclusion of the witness." 10/19/21 Order 15-16, ECF 194.  Similarly,

Defendants' suggestion that Dr. Dennis' safety warning is inappropriate is not a basis for excluding Dr. Dennis' survey and opinions.

Defendants also complain that Dr. Dennis "repeatedly" calls attention to the disclaimer. That is also false. Dr. Dennis' survey shows respondents the disclaimer only twice – once to show the disclaimer and a second time to ask respondents about the likelihood they would purchase the product if it contained the disclaimer. Dennis Decl. at Attach. B 20-21. There is nothing unusual about that type of survey design. *See* Ex. A (Dennis Tr.) at 330:10-331:4 ("From a survey perspective, what I've done here is perfectly legitimate."); *see also* Dennis Reply Decl. ¶¶ 31-42. Dr. Dennis' survey accurately replicates marketplace conditions.

> **2. Courts Routinely Hold that Defendants' "Bias" and "Control" Arguments Go to the Weight of a Survey, Not Admissibility**

Defendants also incorrectly argue that Dr. Dennis' survey should be excluded because his perception test used questions that generated biases. Mot. at 10-12. However, as detailed below, courts in this Circuit and throughout the country routinely hold that arguments similar to the ones Defendants make here only affect the weight to be afforded to Dr. Dennis's survey, not its admissibility.

First, contrary to Defendants' portrayal, not all closed-end questions are leading. Merely because questions are closed-ended, i.e., ask respondents to choose from a set of pre-defined responses, does not constitute grounds for exclusion of a survey. As noted in the Reference Guide on Survey Research, closed-ended questions can actually be better to "remind respondents of options that they would not otherwise consider or which simply do not come to mind as easily." 2011 WL 7724258, 22. Dr. Dennis' questions do not suggest any particular response, and their closed-ended format actually aids the Court in assessing Plaintiffs' claims by ensuring participants provide responses to issues relevant to the case. Even though closed-ended, Dr. Dennis' questions

about packaging communications include the "Don't know / not sure" control option, and the follow-up questions on purchase intent cover all potential options available. This ensures reliability. The lack of a "don't know/have no opinion" option was key to the district courts' criticism of the surveys in *L & F Prod., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.*, 845 F. Supp. 984, 998 (S.D.N.Y. 1994), aff'd, 45 F.3d 709 (2d Cir. 1995), and in *Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche Inc.*, 2006 WL 2588002, at *23 (S.D.N.Y. Sept. 6, 2006), cases cited by Defendants. On the other hand, Dr. Kivetz's open-ended questions, followed by open-ended probing, are prone to elicit ambiguous responses that could have overlapping meanings and could cause consumers to omit information that they feel is a "given" – like whether the product is safe. Dennis Reply Decl. ¶¶ 26-27, 49-57

Defendants' reliance on *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955 (N.D. Cal. 2014), is also misplaced. The survey there is materially different than the survey Dr. Dennis conducted in this case. In *O'Bannon*, the first question of the survey was found to have "primed" respondents because of the unique environment at the time surrounding the payment of student athletes – all such payments up to that time were illegal, so respondents were primed to think they were illicit. *Id*. at 975. That is not the case here where the question about the safety warning is the last thing respondents see and there are no unique circumstances. Two things from *O'Bannon* are noteworthy, however. First, the objectionable question in *O'Bannon* was an *open-ended* question (*id*.), like ones Dr. Kivetz used in his survey. Second, despite the issues noted, Dr. Dennis' survey was *admitted* in *O'Bannon* and he later testified at trial. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2014 WL 6862783 (N.D. Cal. 2014).

Arguments similar to the ones Defendants make here were also considered and rejected by Judge Briccetti of the Southern District of New York in *In re Scotts EZ Seed Litig*., 2017 WL

3396433 (S.D.N.Y. Aug. 8, 2017), a consumer class action involving similar opinions and surveys from Dr. Dennis himself.  There, the defendants argued Mr. Dennis' opinions  should be excluded, alleging he "failed to include a control group" and used a CVM survey that "did not replicate market conditions"; [and] was leading and biased," and a consumer perception survey that "was biased,…omitted key label information,… [and] lacked open-ended questions, rendering it suggestive."  *Id.* at *8.  Rejecting defendants' arguments (the same ones Defendants make here), Judge Briccetti held that "[e]ach of these arguments 'ultimately go to the weight, not the admissibility, of [Dr. Dennis'] testimony and are fodder for cross-examination, not exclusion.'" *Id.* (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2664199, at *2 (S.D.N.Y. June 20, 2017)).

Judge Briccetti further explained:

Dr. Dennis carefully explained the efforts he went through to ensure the reliability of his survey results. For example, Dr. Dennis explains that he "modified the branding and product descriptors of the EZ Seed product to disguise the EZ Seed product from the purchasers responding to the survey ... in order to prevent respondents from answering the valuation questions by relying on pre-existing beliefs, opinions, and attitudes towards the Scotts brand name." (Dennis Report ¶ 22). He further explains that by creating this "fictitious product" he "was able to isolate the effect of the '50% thicker' label and prevent extraneous variables, such as brand name, from influencing respondents' valuations." (*Id.*). Moreover, he used an established surveying company to build his survey and conducted an "incidence check survey" to estimate the percentage of the surveyed population that would meet the target group of "qualified grass seed purchasers." (Dennis Report ¶ 49). He also pre-tested the survey questionnaire to assure its quality and identify improvements. (*See id.* ¶¶ 50-52). In addition, he carried out telephone interviews with seven pre-test respondents to determine whether any of his questions were confusing or unclear, and made certain revisions accordingly based on these interviews. (*Id.* ¶¶ 55-56). The Court again concludes Dr. Dennis's methods "do not raise significant *Daubert* problems," and any weaknesses may be more properly brought out on cross-examination. *Dzielak v. Whirlpool Corp.*, 2017 WL 1034197, at *20.

*In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *10.

Just as Dr. Dennis did in *In re Scotts EZ Seed Litigation*, here too, Dr. Dennis detailed the efforts he undertook to disguise the study's research objectives. *See*, *e.g.*, Dennis Decl. at Attach. B; *see also* Dennis Decl. ¶ 85 ("Attachment B shows the various steps that I took in the survey to disguise the study's research objectives."). He also explained how he was able to isolate qualified respondents. *Id.* ¶ 83 ("To select a representative sample of consumers for my survey, I followed procedures similar to those used by Dr. Kivetz in his survey, including the screening of qualified participants…"); *see also id.* ¶ 84 (displaying specific qualifying indicators). He also used a reputable survey company to build his survey. *See id.* ¶ 111 ("I retained the survey firm Dynata to provide me with the online survey vendor services for programming the questionnaire, providing the respondent sample, and for collecting the survey data. Based on my experience in the industry (as described above), Dynata is regarded as one of the most credible and reliable non-probability online panels having the necessary scale for this study, which involves collecting a substantial number of interviews on a relatively low incidence consumer segment in specific states."). Finally, he also ensured that pretest interviews with respondents were conducted in order to identify any potential confusion or quality control issues before the survey went live. *See id.* ¶ 112 ("Dynata conducted the pretest survey for me, collecting the survey data for 77 interview completions on September 22, 2021. I conducted the pretest to test the consumer survey with a representative sample of members of the study target population. … I conducted the pretest for the following purposes: (i) for quality control and quality assurance testing of the survey instrument, (ii) to validate that the survey questionnaire was programmed correctly to my specifications, (iii) to identify any survey questions that were unclear to respondents, and (iv) to analyze the data to identify any problems, such as unexpected missing data.").

Thus, for the same reasons as in *In re Scotts EZ Seed Litigation*, "Dr. Dennis's methodology in the consumer perception survey will assist the trier of fact in evaluating issues in this case, is based on sufficient facts and data, and is 'the product of reliable principles and methods,' and [] Dr. Dennis has 'reliably applied th[ose] principles and methods to the facts of th[is] case.'" 2017 WL 3396433, at *10 (citing Fed. R. Evid. 702 and *Daubert*, 509 U.S. at 594-95). It therefore comes as no surprise that courts throughout the country uniformly hold that Defendants' various "bias" arguments do not warrant exclusion of any survey conducted by Dr. Dennis, a recognized expert in his field. *See, e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 602-603 (N.D. Cal. 2018) ("The replication survey using technical language actually proves the point that Dr. Dennis's survey needs to go to a fact-finder, who may determine if plaintiffs' survey is unduly biased."); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal. 2018) ("[I]n any event, like all of Kellogg's other survey methodology concerns, Kellogg's focalism bias objection goes to the weight, and not to the admissibility, of Gaskin's proposed conjoint analysis."); *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 613 (9th Cir. 2016) ("Although the district court faulted the survey's biased questions and unrepresentative sample, neither defect was so serious as to preclude the survey's admissibility."); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010) ("[T]he Marylander survey ... may have been suggestive.... But these criticisms, valid as they may be, go to ... the weight of the survey rather than its admissibility."); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997) (holding that whether a survey's

questions were leading "go[es] only to the weight, and not the admissibility, of the survey").[2] Defendants offer no valid basis for this Court to rule differently.

Lastly, relying on *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218 (S.D.N.Y. 2010), Defendants argue that Dr. Dennis's survey is unreliable because he "did not use any controls" (Mot. 13), but that too is wrong. As an initial matter, Defendants' reliance on *THOIP* is misplaced because *THOIP* concerned a "likelihood of confusion" survey in a Lanham Act trademark dispute. *Id.* at 240. Critically, unlike the survey at issue here, "[a] survey designed to estimate likelihood of *confusion* must include a proper control." *Id.* (emphasis added). This same argument was considered and rejected by Judge Briccetti in *In re Scotts EZ Seed Litigation*, 2017 WL 3396433, at *8-9, with respect to a survey conducted by Dr. Dennis, where the court found not including control group or control answers to some questions is "fodder for cross-examination." Other courts routinely hold the same. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1078 (C.D. Cal. 2015) (an argument that a "survey does not utilize a control group or include proper control questions to account for preconceived notions that consumers might have…goes to the weight accorded a survey, not its admissibility."); *Sentius Int'l, LLC v. Microsoft Corp.*, 2015 WL 331939, at *6 (N.D. Cal. Jan. 23, 2015) ("allegations that [expert] improperly used an omnibus survey and lacked adequate quality control measures likewise are not reasons to exclude [expert]'s survey under *Daubert*.").

Finally, Defendants' "control" criticism only serves to undermine their own expert's

---

[2] *See also THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 241-42 (S.D.N.Y. 2010) (alleged flaws survey including that "the questions were biased and leading, [and] the universe was incorrect…go to weight and not exclusion."); *Svenson v. Google*, 2016 WL 8943301, at *6 (N.D. Cal. Dec. 21, 2016) (rejecting argument that biases, including focalism bias, rendered expert's opinion inadmissible); *Morales v. Kraft Foods Grp., Inc.*, 2017 WL 2598556, at *15-16 (C.D. Cal. June 9, 2017) (where survey "telegraphed to respondents the purpose of the survey…This phenomenon is known as 'focalism.' [it] goes to the weight, not the admissibility of the challenged survey.").

survey. *See* Dennis Decl., ¶ 69 ("By revising the control product name to "Soother" and by failing to disclose any danger, Dr. Kivetz's control stimulus is improper because it shares the same false and deceptive characteristics as the original packaging of the Defendants' products. Without a proper control against which to test the Defendants' packaging, Dr. Kivetz's survey is unhelpful and meaningless."). Dr. Kivetz's control so closely resembles the subject packaging, and includes no reference to potential danger, that it is useless to gauge the impact of the marketing Plaintiffs challenge. In contrast, Dr. Dennis employed adequate controls to ensure attentiveness and to assess the impact of pre-existing knowledge on the participants' answers. As detailed in his report, Dr. Dennis concluded the survey by asking respondents to describe "any issues you have heard or read about involving baby products such as the product you examined earlier." Dennis Decl. ¶ 106. He then examined those results and noted that prior knowledge of any issues did not have any meaningful impact on the results *Id.* ¶¶ 107-109.

### 3. Dr. Dennis' Survey Is Clearly Relevant to the Issues in This Case

Lastly, Defendants contend, without citing any authority, that the Court should exclude Dr. Dennis' survey because it supposedly is "inconsistent with Plaintiffs' theory of liability." Mot. 4-15. That argument is nonsense. As Plaintiffs explained in their reply in support of class certification, their theory of liability is that "Defendants misled consumers into buying a product that is dangerous for its intended use, and consumers would not have purchased the RNPS at all, or would have paid less for it, had the truth been disclosed." Pls.' Class Certification Reply ("Pls.' Reply") 62, ECF 202. Dr. Dennis sought to test consumer perceptions that are directly related to that theory. Dennis Decl. ¶ 78. Dr. Dennis' survey demonstrated that when consumers learned the truth about the risks associated with the RNPS, they were far less likely to purchase the product.

*See* Pls.' Reply 24-25; Dennis Decl. ¶¶ 102-105.  Accordingly, Dr. Dennis' survey is entirely consistent with Plaintiffs' theory of liability.

Defendants also argue that Dr. Dennis' results prove that the failure to warn consumers about the dangers of the RNPS was immaterial to consumers. Mot. 1, 4.  As an initial matter, Defendants' position improperly assumes a *subjective* standard of materiality applies here, which is incorrect. Under New York law, "[m]ateriality is an objective inquiry; a plaintiff must show that the act complained of was likely to "mislead a reasonable consumer acting reasonably under the circumstances." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (emphasis added) (citation omitted). To support a claim under NY GBL § 349, "[a] misstatement is material if the information would be important to consumers and *could* affect their choice of product. *George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 653 (S.D.N.Y. 2014) (citation omitted and emphasis added).  Thus, Plaintiffs need not prove the alleged misstatement would have been *the* deciding factor in a reasonable consumer's purchase decision, only that it is something important a reasonable consumer would want to know when making the decision whether or not to purchase. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30, 731 N.E.2d 608, 612–13 (N.Y. 2000) (once it is alleged that defendant's material deception caused a loss, "[p]laintiffs need not additionally allege that they would not otherwise have entered into the transaction. Nothing more is required.").  Dr. Dennis' survey, in light of the objective reasonable consumer standard Plaintiffs must meet, proves that materiality is provable on a classwide basis.[3] Moreover, whether curing a material misrepresentation or omission would alter purchase intent goes to reliance, which Plaintiffs are not required to prove to support a GBL § 349 claim.  *See Oswego Laborers' Loc. 214 Pension*

---

[3] Defendants claim in passing that Dr' Dennis' survey cannot establish causation, but provide no law to support this position. Mot. 13.

*Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995) ("[GBL 349] does not require proof of justifiable reliance")

In any event, Dr. Dennis' survey results show that the number of persons who would purchase the RNPS drops dramatically when they are made aware of the safety issues, even in the least incendiary way.[4]  The number of survey respondents who stated they were likely or extremely likely to purchase the RNPS dropped by 32.5% after seeing the conservative warning language. Dennis Decl. ¶ 105.  This is more than sufficient to establish that materiality is capable of classwide proof, as required at the class certification stage.  *See Oshana v. Coca-Cola Co.*, No. 04-cv-3596, 2005 WL 1661999, at *9 (N.D. Ill. July 13, 2005) (there is "no authority that a misrepresentation is immaterial if only 24% of consumers would behave differently.").  Defendants improperly equate purchase intent (without the aid of additional research in what they assert is a "high involvement" purchase decision) with materiality, Dr. Dennis' survey, in light of the objective reasonable consumer standard Plaintiffs must meet, shows this, and proves that materiality is provable on a classwide basis.[5]

Defendants also repeat the facile argument that Dr. Dennis' disclaimer failed to mention "the use for sleep."  But the second word of the disclaimer is "sleeper," which obviously relates to sleep.  Defendants previously launched an identical attack on Plaintiffs' damages expert, Mr. Weir, alleging his "proposed Safety Warning … says nothing about sleep" and was therefore "inconsistent with Plaintiffs' theory of liability."  Defs.' Mot. to Exclude the Decl. and Ops. Of

---

[4] Defendants argue, citing no authority, that the safety disclosure is an inflammatory "skull-and-crossbones" disclaimer. Defs.' Sur-Reply in Opp'n to Class Certification (Defs.' Sur-Reply") 17, ECF 223. This attempt to twist the Court's words from its order denying Defendants' motion to exclude Mr. Weir (ECF 210) falls short.  As the Court stated in that order, "this case presents that comparison of the same product with and without the safety information, and …[t]his criticism goes to weight but does not justify exclusion of the witness." *Id.* 15-16.

[5] Defendants claim in passing that Dr' Dennis' survey cannot establish causation, but provide no law to support this position. Mot. 13.

Mr. Colin B. Weir 22-25, ECF 168-1. The Court rejected the argument, holding that "a disagreement over whether the expert's proposed warning tracks the complaint and the trial evidence is fair game for cross examination. The difference of opinion here scarcely rises to the level of a methodological fault warranting exclusion." 10/19/21 Order 15. The same result should follow here.

### B.  Mr. Silverman's Report and Opinions are Admissible

Defendants' contention that Mr. Silverman's report and opinions supposedly are purely ipse dixit is contrary to law. "The test for reliability of expert testimony is flexible, especially in cases where the expert's knowledge is non-scientific and based on his experience." *Price v. L'Oreal USA, Inc.*, No. 1:17-CV-614(LGS), 2020 WL 4937464, at *3 (S.D.N.Y. Aug. 24, 2020) (quoting *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 49 (S.D.N.Y. 2016)). "In cases where experts draw a conclusion from a set of observations based on extensive and specialized experience, the method is the application of experience to facts." *Id*. "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Advisory Committee Notes, 2000 Amendment, Fed. R. Evid. 702. While *Daubert* provided several non-exclusive factors to evaluate the methodology underlying scientific testimony, 509 U.S. at 592-4, "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Id*. at 156.

Additionally, "[i]f the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly

pertinent." *Arista Recs. LLC v. Lime Grp. LLC*, No. 6-CV-5936(KMW), 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011). "Rule 702 does not demand that a witness's expertise be perfectly tailored to the facts of the case." *Packard v. City of New York*, No. 15-CV-7130(AT)(SDA), 2020 WL 1479016, at *3 (S.D.N.Y. Mar. 25, 2020). As detailed below, whether Mr. Silverman worked on an advertising or marketing campaign specifically for "baby durables," which, in any event, is not a specialized market, is immaterial and not a basis for excluding his well-founded opinions on the materiality of the consistent and uniform marketing message used by Defendants to sell 4.7 million of their sleepers.

Moreover, Mattel clearly believes that Mr. Silverman is a well-qualified expert in his field because it previously hired him to work on its advertising campaigns. Ex. B (Silverman Tr.) 73:18-75:10.

### 1. Mr. Silverman is Qualified to Offer his Opinions

Before addressing Mr. Silverman's qualifications and opinions, Plaintiffs must first correct the record regarding the cases Defendants claim show that similar opinions by Mr. Silverman were excluded. While Defendants state that Mr. Silverman's opinion was excluded in *Price*, they fail to mention that it was only partially excluded, and on grounds not applicable here.[6] 2020 WL 4937464 at *3-4. The court refused to exclude Mr. Silverman's opinions similar to his opinions here. Mr. Silverman's testimony as to what a reasonable consumer expects from a product based on its name, and how one would interpret particular product claims was admitted. *Id*. In fact, the court quoted *Kumho Tire* to support its ruling, equating that to "draw[ing] a conclusion from a set of observations based on *extensive and specialized experience*." *Price*, 2020 WL 4937464 at *4

---

[6]In Price, the court only excluded Mr. Silverman's opinion that a particular item, keratin, was a well-known ingredient and that women were aware of its benefits. Mr. Silverman does not offer that type of opinion here.

(emphasis added) (quoting *Kumho Tire*, 526 U.S. at 156). That is precisely what Mr. Silverman has done here, and his testimony should be accepted for the same reasons.

Defendants also mischaracterize *FLIR Sys., Inc. v. Fluke Corp.*, 2012 WL 13051121 (D. Or. Nov. 5, 2012). Again, Mr. Silverman's opinion was only partially excluded. The court excluded Mr. Silverman's opinions on custom and practice in the thermal imaging camera industry, trademark validity, laches defenses, and particular features of thermal imaging cameras. Mr. Silverman was qualified as an expert to opine, as he does here, on how advertising is developed and presented to consumers and how a company creates and promotes brand equity, even though he had no experience marketing thermal imaging cameras. *Id*. at 3.

Next, Defendants claim that in *Bailey v. Rite Aid Corp.* 338 F.R.D. 390, 401 (N.D. Cal. 2021)), Mr. Silverman was "admitted *in part* because he visited Rite Aid stores to view product placement." Mot. 22 (emphasis added). As written, the passage insinuates that Mr. Silverman's opinion was partially admitted when it was admitted in full. In that case, which concerned acetaminophen gelcaps marketed as "rapid release," the court held that "Silverman's experience allows him to reliably and persuasively opine as to the issues of likelihood of deception and materiality." *Bailey*, 338 F.R.D. at 401. The court noted Mr. Silverman's "five decades of experience in the "marketing-communication industry," which includes work that is directly relevant to the industry at issue here," the fact that he "has interviewed thousands of consumers over the course of his career and has observed thousands of focus group sessions, including about products sold at mass merchandisers. *Id*. The court also noted that Mr. Silverman is not required by statute or case law to conduct a consumer survey in order to tender his expert opinion. *Id*. Finally, after all this justification, the court stated that "[a]dditionally Silverman visited several Rite Aid stores" to review the product placement. *Id*. In this case, Mr. Silverman reviewed every

image of in-store product placement that was provided to Plaintiffs in discovery. Defendants had the opportunity at Mr. Silverman's deposition for "vigorous cross-examination" to present any further store placement they deemed important, but they instead spent over ten minutes asking him about his daughter's purchase behavior, as if that had any bearing on this case, but did not. Ex. B (Silverman Tr.) 195:10-203:21.

Finally, Defendants outright invent that Mr. Silverman's testimony was excluded in *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 2017 WL 10399343 (C.D. Cal. Nov. 17, 2017). While the court had criticisms of Mr. Silverman's report in that order, Mr. Silverman was admitted as an expert and later testified at trial. *See Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 2019 WL 8645577 (C.D. Cal. Jun. 20, 2019). The court accepted Mr. Silverman's opinion on what a reasonable consumer would expect regarding fees charged for whale watching excursions.

Mr. Silverman's extensive experience marketing consumer products and evaluating consumer preference makes him supremely qualified to opine on what consumers desire and how consumers interpret advertising. Contrary to Defendants' brief, Mr. Silverman has experience working with companies that sell baby durables. Regardless, "Rule 702 does not demand that a witness's expertise be perfectly tailored to the facts of the case." *Packard*, 2020 WL 1479016, at *3. Mr. Silverman's unparalleled experience in successfully marketing products to consumers across myriad product categories is precisely the type of "experiential qualifications in a general field closely related to the subject matter in question" that it would be improper to exclude his testimony "solely on the ground that [he] lacks expertise in the specialized areas" of baby durables. *Arista Recs. LLC*, 2011 WL 1674796 at *3. In any event, baby durables is not a specialized market

that requires marketing that is different than marketing for other consumer products, and Defendants have produced no evidence that it is.

Defendants attack Mr. Silverman's qualifications alleging he did not do empirical research or use a scientific method to reach his conclusions, but this argument is devoid of merit. Defendants misconstrue *Kumho Tire* to reach this unsupported conclusion. *Kumho Tire* held that the *Daubert* standard applies to all experts, not just those testifying on scientific matters. 526 U.S. at 149. As New York courts have recognized, *Kumho Tire* did not hold that all experts must use scientific methods to be qualified. *See, e.g., Packard*, 2020 WL 1479016, at *3-4 (S.D.N.Y. Mar. 25, 2020) (police officer with 15 years' experience, including training officers, qualified to testify about impact of training on officers, even though not based on "traditional scientific methods.").

Further, nothing in *Kumho Tire* (which involved tire defect analysis – a technical field) states that the "specialized experience" required for a marketing expert to opine on consumer behavior must be so granular as to mandate work within a small segment of a larger industry. Mr. Silverman has extensive experience in the "general field closely related to the subject matter in question" so as to be qualified to offer his opinion here. *Packard*, 2020 WL 1479016, at *3. Mr. Silverman testified that, while he did not work directly on advertising for baby durables, he did work with numerous products meant to be used or consumed by infants and children, including diapers, food, pediatric services, toys and games, and clothing. Ex. B (Silverman Tr.) 134:10-137:10, 152:8-158:25. He also noted that he participated in focus groups with consumers for products including bassinets, cribs, and playpens, which are baby durables. Ex. B (Silverman Tr.) 129:6-25. Additionally, although he did not recall the specific campaigns, Mr. Silverman worked for retailers who sold baby durables, including Big Lots and Sears. Ex. B (Silverman Tr.) at 80:19-81:19, 102:6-103:14. Defendants have made no showing, nor even any argument, that consumers

of baby durables are fundamentally different than consumers of other consumer goods for children. To the contrary, Mr. Silverman testified that, in his experience, consumers of items marketed to be used by children were consistently concerned with safety and expected the product to be usable for the purpose stated on the label. Ex. B (Silverman Tr.) 324:8-326:8.

Dr. Kivetz's criticisms of Mr. Silverman's opinions can best be summarized as claiming Mr. Silverman cannot offer an opinion since he did not conduct a survey.  As previously noted, Mr. Silverman is not offered to provide a scientific opinion, but an opinion based on his extensive experience in the field of advertising, which is permissible under Rule 702.  Dr. Kivetz makes numerous assertions, mostly stating that Mr. Silverman's opinion is "unscientific."  Dr. Kivetz and Mr. Silverman are two different types of experts.  Dr. Kivetz is knowledgeable about surveys as an academic.  Mr. Silverman is knowledgeable about advertising and consumer behavior because of his extensive experience and success in that field in the real world.  Just because an expert's opinion is not science-based or supported by peer reviewed academic literature does not invalidate that opinion, so long as it was arrived at based on application of a reliable method derived from real world, relevant experience, as is the case with Mr. Silverman's opinion here.

### 2. Mr. Silverman's Opinions Are Reliable Because They Are Based on Application of His Specialized Experience to the Facts of This Case

Defendants attempt to distort Mr. Silverman's methodology, but cannot argue with its track record of success.  As seen in his CV, his process of evaluating advertisements and consumer behavior has served him quite well over a distinguished career in advertising that stretches back to the Lyndon B. Johnson administration.  Mr. Silverman's report identifies his 5-step process in evaluating advertising, and states that it is the same one he used in his decades of experience. Silverman Decl. ¶¶ 29-30.  The Court need only to look at the full deposition sections cited by

Defendants to realize that they misrepresent his testimony by selecting a handful of words for quotation, out of multiple pages of testimony.  Ex. B (Silverman Tr.) 243:6-250:21.

For instance, Defendants claim Mr. Silverman "keeps it vague, stating that the demographic [for the RNPS] is "very, very broad here."  Mot. 20.  A review of the transcript reveals that Mr. Silverman further stated: "You know, it's anybody who has either had a baby or wants to buy a, in essence, a gift for someone who recently had a baby.  The psychographics are people who want to buy -- who kind of fit in to wanting to buy a -- a product that will solve a particular problem for -- for the mother and father of an infant."  Nearly every section of the Silverman deposition transcript cited on page 20 of Defendants' Motion includes context that negates what Defendants assert in their brief with their cherry-picked quotes.  Mr. Silverman has factual basis for his opinions and is not speculating, but instead is offering is expert opinion guided by his unique and extensive experience.  Ex. B (Silverman Tr.) 243:6-250:21.

Defendants' contention that Mr. Silverman's opinions should be excluded because he did not conduct a survey is wrong as a matter of law.  A survey is not required to prove the public is likely to be misled by advertising.  *See Bailey v. Rite Aid Corp.*, 338 F.R.D. at 401; *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 673 (2006), as modified on denial of reh'g (Jan. 31, 2006); *Consumer Advocs. v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1362 (2003); *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1348 (2003).  In *Price*, the Southern District of New York recently recognized this precedent, and applied the same reasoning to claims brought under NY GBL § 349, holding that a survey is not required to establish that materiality is provable on a classwide basis. 2020 WL 4937464, at *10.  Here, just like in *Price*, Defendants have cited "no binding legal authority

holding that an expert opinion is insufficient to show that a defendant's deceptive acts are misleading under the GBL" without performing a survey. *Id*.

Defendants cite several cases in which scientific or technical evidence was excluded based on lack of connection between the method and result, but ignore any cases in which an expert was held to be qualified in a non-scientific field based on experience. Mot. 17-18.  Silverman opines on (1) effective methods marketers and advertisers use to sell products, (2) what the RNPS product packaging would convey to consumers, (3) that Dr. Kivetz's survey was flawed because it compared two products with distinct positioning in the market. Silverman Decl. ¶¶ 32-35, 37-40, 39-62, 139-143.  None of these opinions need be based on a scientific test to be reliable.  Instead, they can properly be based on exactly what Mr. Silverman possesses – a lifetime of successful experience evaluating marketing, advertising, and consumer preferences.  This is not *ipse dixit* as Defendants wrongly contend, but rather a valid application of Mr. Silverman's extensive experience to the facts of this case, which is permissible as a matter of law.

To the extent Defendants claim Mr. Silverman is not qualified to offer an opinion on survey technique, Plaintiffs restate that they have not proffered Mr. Silverman as a survey expert.  Mr. Silverman opines on how a reasonable consumer would interpret the positioning of the product choices Dr. Kivetz presented to consumers, which is within his realm of expertise.

Mr. Silverman's opinion is based on a reliable application of his sound methodology to sufficient relevant data in this case.  Among other evidence, Mr. Silverman's report cites approximately 180 documents produced by Defendants in discovery, pleadings, deposition transcripts, and blog posts as material relied upon.  Silverman Decl. at Exhibit A.  Defendants' criticism of Mr. Silverman's report because Plaintiffs' counsel supposedly "cherry-picked" the materials he reviewed are unwarranted.  Of course Plaintiffs' counsel gave documents to Mr.

Silverman, because counsel conducted the discovery in this case. Defendants' counsel surely did the same with their experts. Mr. Silverman asked counsel to provide him with certain categories of documents that he believed would be useful in formulating his opinion, which counsel then located and provided. Again, if Defendants wished to challenge the validity of Mr. Silverman's opinions by presenting him with documents that they contend support their position, they could have done so at his deposition, but did not.

### 3. Mr. Silverman's Opinions Are Relevant to the Issues Before the Court

Mr. Silverman's depth of knowledge on what a reasonable consumer desires and how they interpret advertising is useful to the Court in determining whether materiality can be proven on a classwide basis. Defendants expended much briefing time, and vast sums of money hiring Dr. Kivetz to design a consumer survey (which completely excludes any reference to the dangers of the Sleeper), to claim that materiality cannot be proven on a classwide basis. Still, Dr. Kivetz findings (an assertion that his survey can answer the materiality question across the whole class) are actually *in favor of* Plaintiffs' position that materiality can be proven on a classwide basis. Still, neither of the survey experts in this case have the marketing and advertising experience of Mr. Silverman, so his opinion ads another, useful piece of evidence on which the Court can rest its decision. Mr. Silverman's unique experience will be invaluable to the Court in understanding the "reasonable consumer," as that standard is what applies to a claim under NY GBL § 349.

### 4. Mr. Silverman Does Not Impermissibly Opine on Defendants' Intent

Defendants' Motion claims Mr. Silverman opines as to Defendants' intent in paragraphs 46, 57, 81, 87, 102 and 147 of his declaration. In all of these paragraphs, Mr. Silverman offers statements of fact supported by the evidence in this case – describing *what* Defendants did, not why they did it.   This is permissible under the law. In any event, Defendants have already

stipulated that their state of mind is a common issue for purposes of class certification, so the argument is entirely superfluous.  12/9/2019 Hearing Tr. 36:17-19, ECF 125-26.

## IV.    CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion to Exclude the Declaration and Opinions of Plaintiffs' Experts Bruce Silverman and Dr. J. Michael Dennis in its entirety.

Dated: January 13, 2021                                   Respectfully submitted,


*/s/ Demet Basar*
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
W. Daniel Miles, III
Demet Basar
James B. Eubank
Paul W. Evans
218 Commerce Street
Montgomery, Alabama 36104
Tel:    (334) 269-2343
Fax:    (334) 954-7555
Dee.Miles@BeasleyAllen.com
Demet.Basar@BeasleyAllen.com
James.Eubank@BeasleyAllen.com
Paul.Evans@BeasleyAllen.com

*Plaintiffs' Lead Counsel*

**CONNORS LLP**
Terrence M. Connors
Andrew M. Debbins
1000 Liberty Building
Buffalo, NY 14202
(716) 852-5533
tmc@connorsllp.com
amd@connorsllp.com

*Plaintiffs' Liaison Counsel*